J. W. WATERBURY v. THE CHICAGO, MILWAUKEE & St. PAUL RAILWAY COMPANY, Appellant.

**Negligence: RAILROADS.** It is negligence on the part of a railway company to allow an accumulation of ice upon the platform of its passenger station, caused by the dropping of water from the roof, to remain without any effort to remove it, or cover it with some substance that would be less dangerous.

**CONTRIBUTORY NEGLIGENCE.** One who, in entering a railway depot, passed over a place made unsafe by an accumulation of ice, and knew of its dangerous condition, yet who soon thereafter, while watching upon the platform for the incoming train, stepped backward upon the ice without looking or taking any precaution for

his safety, whereby he fell to his injury,—is guilty of contributory negligence.

**Evidence: CROSS-EXAMINATION.** A question asked on cross-examination which has already been answered may be properly objected to on that account.

**Appeal: REVIEW OF FINDINGS.** Special findings by a jury will not be sustained if contrary to the evidence, and when material and determinative in their character, the party found against will not be presumed to have had a fair trial.

LADD, J., taking no part.

*Appeal from Plymouth District Court.*—HON. SCOTT M. LADD, Judge.

THURSDAY, DECEMBER 16, 1897.

ACTION to recover damages for a personal injury. Verdict and judgment for plaintiff. Defendant appeals. —*Reversed.*

·  *Shull & Farnsworth* for appellant.

*Argo, McDuffie & Argo* for appellee.

KINNE, C. J.—I.  Plaintiff, a merchant in the town of Hudson, S. D., on December 30, 1893, went to the depot of the defendant in said town with his mother, she intending to take passage to Akron, Iowa. The negligence charged is "that for a long time prior to the 30th day of December, 1893, the said defendant railroad company, carelessly, negligently, and unlawfully suffered and permitted ice to accumulate on the platform adjacent to its passenger depot in said town of Hudson, and on a place on said platform necessarily used by the public in going to and from the passenger trains stopping at said station; that said accumulation of ice on said platform was by said defendant negligently permitted to remain in an unsafe and dangerous

condition, without any guards around the same, or without any sand, ashes, or other material covering the same, and in such a manner that it was dangerous and unsafe for persons to pass over and cross the same; that on the thirtieth day of December, 1893, the plaintiff accompanied his mother, an old lady of the age of sixty-one years, to said depot for the purpose of assisting her to get aboard of a passenger train which would be due in about five or ten minutes, she intending to return to her home where she resides at Akron, Iowa; that while the plaintiff was standing on said platform, at a place where he had a lawful right to stand, and at a place used by the public, without any knowledge on his part of the dangerous condition of the said platform, and without any knowledge of the fact that the defendant had carelessly and negligently let the ice as aforesaid accumulate and remain on said platform, and without any negligence or fault whatever on his part, he stepped upon said ice, causing his feet to slip, violently throwing him down upon said platform, striking upon the corner of an elevated portion thereof, whereby plaintiff was greatly injured, his left collar bone was broken, his left shoulder and side badly bruised and injured, causing him to be made sick, sore, and lame, and suffering great pain and anguish, and being permanently injured." In response to certain special interrogatories submitted to them by the court, the jury found that the ice on the platform was not caused by a general storm which continued at the time of the accident; that plaintiff could not, by the exercise of ordinary care, have seen the ice where he slipped, and have avoided the injury by the exercise of such care; that plaintiff did not fall because of the mere slipperiness of the ice on the platform; that plaintiff's fall was not caused by stepping back, and his foot striking the incline of the platform, while he was looking in another

direction; that the platform was not in a reasonably safe condition at the time plaintiff received his injury, and that defendant was negligent in permitting the platform to be in the condition in which it was; that plaintiff did not contribute to his injury by his own negligence. The errors assigned arise on the introduction of evidence; the refusal to direct a verdict; the refusal to submit interrogatories asked; the refusal to give certain instructions; and in overruling the motion for a new trial.

II.   It will be necessary to briefly describe the situation surrounding the accident in order that what we may say may be correctly understood and applied. The defendant's depot building at Hudson is erected so that the side of the building is opposite the track. A platform runs along the east side of the building, between it and the track. There is a door opening into the waiting room. The platform on the west side of the building is higher than the east side, and level with the bottom of the doors of the freight cars. At the north or back end of the depot there is a platform built with an incline from the platform on the west side of the building to the platform on the east side. Previous to the day of the accident it had rained and sleeted, and some snow had fallen, and the entire surface of the ground and platform was covered with ice, and at places with patches of snow. At about 2 o'clock P. M. plaintiff, with his mother, an elderly lady, came to the depot, she intending to take passage on a train which was soon due. They came upon the high part of the platform by means of steps at the north end of the building, passed down over the incline to the level part of the platform on the east side of the building, and proceeded south on the platform to the south end of the building, into the waiting room. After seating his mother, the plaintiff passed out onto the level

part of the platform on the east side of the building, and walked along until he came to the incline at the north end of the building. He stopped at a point a few feet north of the north end of the building, and a few feet east of the bottom of the incline, and was looking north and east in the direction of the incoming train. His back was towards this incline. Without turning around, he steeped backwards a few steps, when his feet struck this incline, and he slipped and fell, breaking his collar bone and otherwise injuring him. The defendant's claim is that his own negligence produced the fall and injury.

III. The plaintiff, on cross-examination, was asked if in going down the incline with his mother he had not come over the ice upon which he claimed to have slipped. The objection was that the question had already been answered. There can be no question from this record that the objection was well taken, and there was no error in the ruling.

IV. At the close of the evidence for the plaintiff, defendant moved for a verdict because the evidence was not sufficient to sustain a verdict for plaintiff, because plaintiff was guilty of such negligence as to prevent his recovering, and no negligence had been shown on part of the defendant. Two questions were presented by this motion: *First*, was the defendant negligent? and, *second*, if it was, did plaintiff by his own negligence directly contribute to produce the injury of which he complains?

As to the defendant's negligence. The evidence for the plaintiff tended strongly to show these, among other, facts: That about December 24th it rained; that the weather turned cold, and the rain was frozen until the entire surface of the depot platform and of the streets and sidewalks of the village was covered with a thin sheet of sleet and ice; that at the

northeast corner of the depot the water from the roof accumulated, and dropped upon the platform, freezing there, and forming an accumulation of ice upon and near to the foot of the incline where the plaintiff fell; that this ice was much thicker than it was on other parts of the depot platform by reason of this dropping of the water from the roof, and was in size from three to five feet wide by from four to six feet long. There was evidence also tending to show that this ice was covered with some snow. It is clear that this extra accumulation of ice at the place where plaintiff fell was not the result of natural causes. It was to a great extent an unnecessary accumulation, due to the manner in which the roof of the depot was constructed, and by the exercise of ordinary care could have been avoided. It was the duty of the defendant to have removed it, or, if that could not be done, to have taken precautions to prevent injury to persons passing over it by covering it with salt, ashes, or some substance which would render it less dangerous. This extra accumulation of ice had taken place several days before the plaintiff fell thereon. We have no doubt, then, under the evidence, that defendant was negligent.

Did plaintiff, by his own negligence, contribute directly to produce the injury of which he complains? It may be conceded that he was at the depot for a lawful purpose; that he had a right to go out upon the platform to look for the train, but in so doing he was bound to exercise ordinary care. He testifies that when he took his mother to the waiting room they came down over this same incline upon which he afterwards fell; that it was covered with ice, and there was some snow at the bottom of it, and it was very slippery; that he was familiar with this incline,—knew how it was built; that it was so slippery everywhere that one walking had to keep watch. It

clearly appears that he had as full knowledge of the condition of the depot platform at the point where he fell as the defendant could have had. Knowing its dangerous condition at that place, he walked out to or near the foot of this incline, and when about three feet from it, and while standing with his back to it, he began stepping backwards without looking or taking any precautions whatever for his own safety. In view of these circumstances, it seems to us it cannot be said that he exercised ordinary care. Having full knowledge as to the dangerous condition of this incline, and the point near it,—having passed over it a few minutes before with his mother, when he says he was especially careful, —he proceeds to step backwards upon it without exercising any care whatsoever. From the undisputed facts,—from his own evidence,—but one conclusion can be drawn, and that is that he was guilty of negligence which resulted in his injury. It does not appear that there was any necessity for stepping backwards onto this incline, which he knew was especially dangerous, save to escape the wind, and that would not justify his so doing without exercising any care for his safety. We have given the evidence careful consideration, and reach the conclusion that the plaintiff was, as a matter of law, guilty of contributory negligence which will preclude a recovery.

V. After the evidence was all in, the defendant renewed its motion to direct a verdict. This motion should have been sustained, as no further evidence was introduced in any way tending to show that plaintiff was in the exercise of ordinary care when he fell.

VI. In view of our conclusion as to these motions, we need not consider all of the other questions discussed. The jury found specially that plaintiff could not, by the exercise of ordinary care, have seen the ice

where he slipped and fell, and by such care have avoided the injury. This finding, as well as the seventh, that plaintiff did not directly contribute to his injury by his own negligence, was clearly contrary to the evidence, and cannot be sustained. These facts were material and determinative in character, and it cannot be presumed, in view of the answers of the jury, that the defendant had a fair trial.

VII. The instructions given were correct, and fully and clearly presented the law of the case, and those asked, so far as correct, were substantially embodied in the court's charge. As we have indicated, the error of the court consisted in refusing to sustain the motion to direct a verdict for the defendant and in overruling the motion for a new trial. As for the error pointed out the case must be reversed, we shall not discuss the question as to the verdict being excessive, nor the complaint made as to misconduct of plaintiff's counsel.—REVERSED.

LADD, J., taking no part.