# Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. Hadley, by Next Friend.

[No. 21,142. Filed December 20, 1907. Rehearing denied March 19, 1908.]

1. TRIAL.—*Instructions.—Railroads.—Care Required of Passenger.* —An instruction that a common carrier must exercise the highest degree of care in providing safe appliances and cars for passengers, and that passengers "must also exercise an equally high degree of care to protect themselves from injury," is properly refused, since a passenger is required to exercise only ordinary care for his safety. p. 207.

2. SAME.—*Instructions.—Passenger Putting Arm Out of Window. —Contributory Negligence.*—An instruction, that if the plaintiff protruded her arm from the window of defendant railroad company's rapidly-moving train, she was guilty of contributory negligence precluding a recovery, is incorrect, such question, upon the assumed facts, being for the jury. p. 207.

3. SAME.—*Instructions.—Fall of Car Window.—Applicability to Evidence.*—An instruction that if plaintiff, a passenger on defendant's train, raised the car window until it locked or caught, and, on account of its weak, broken, or defective lock, it fell and injured plaintiff's arm, without her fault, the company would be liable, is not erroneous, where defendant insisted that such lock was perfect. p. 208.

4. SAME.—*Instructions.—Fall of Defective Car Window.—Res Ipsa Loquitur.*—An instruction that if a passenger was injured by reason of the weak, broken, or defective condition of the car in which such passenger was riding, or any of the equipments and appliances connected therewith, the mere happening of the injury is *prima facie* evidence of the company's negligence, and it is incumbent upon the company to excuse such *prima facie* failure of duty, is correct, the doctrine of *res ipsa loquitur* applying. pp. 208, 217.

5. SAME.—*Instructions.—Burden of Proof.—Injury from Defective Railroad Appliances.*—An instruction that the happening of an injury to a passenger because of defective appliances creates a *prima facie* case, and the company has the "burden" of proving, in order to rebut the presumption of negligence, that the accident could not have been avoided by the highest practical care and diligence, is correct, the word "burden" evidently meaning duty or obligation. p. 210.

6. EVIDENCE.—*Res Ipsa Loquitur.—Avoidance of Prima Facie Case. —Railroads.—Defective Appliances.*—Where a passenger proves

that she was injured because of a defective car window, the company, to avoid such *prima facie* case, may show collateral facts which explain that the company had used the required care and diligence in the maintenance of its equipment. p. 211.

7. TRIAL.—*Instructions.—Consideration of Expert Testimony.*—An instruction that the opinions of medical experts are to be considered in connection with the other testimony in the case, but that the jury is not bound to act upon such to the exclusion of the other evidence, is not erroneous. p. 211.

8. EVIDENCE.—*Effect of Medical Treatment.*—In an action for personal injuries, it is.competent to ask a witness what effect medical treatment had upon plaintiff's injured arm. 212.

9. SAME.—*Ability as a Teacher.—Opinions.*—In an action for personal injuries to a teacher, the plaintiff's father is *prima facie* competent to testify as to plaintiff's ability as a teacher, the jury being the judges of the weight of such testimony. p. 212.

10. SAME.—*Comparative Condition of Injury at Time of Trial and Six Months Previous.*—It is competent, in a personal injury case, to ask a witness as to the comparative condition of plaintiff's injured arm at the time of trial and six months previous. p. 212.

11. SAME.—*Amount of Salary Received by Witness from Defendant.—Credibility of Witnesses.*—In an action against a railroad company for personal injuries, it is competent, on cross-examination, as affecting his credibility, for plaintiff to ask defendant's witness who was a conductor on defendant's train, how much salary he received. p. 213.

12. APPEAL.—*Improper Admission of Evidence.—Exception.*—Where no exception was taken to the alleged improper admission of evidence, no question thereon can be raised on appeal. p. 213.

13. TRIAL.—*Argument to Jury.—Misconduct.—Decision of Trial Court Thereon.—Appeal.*—Where allegations of misconduct in the argument to the jury are made and denied in the trial court, the trial judge's decision thereon is final on appeal, such statements having been made in his presence. p. 213.

14. SAME.—*Argument to Jury.—Misconduct.—How Questioned.*—To present any question upon alleged misconduct in the argument to the jury, a proper motion, in reference thereto, must seasonably be made, an exception reserved and the ruling embraced in the motion for a new trial. p. 214.

15. DAMAGES.—*Excessive.*—A judgment for $10,000 is not excessive, where a strong and healthy girl twenty years old had the ulnar nerve of her arm probably permanently injured, causing her constant, severe pain, and disabling her from practicing upon the piano, or from giving elocutionary, or Delsartian entertainments, and rendering her nervous and sleepless. p. 215.

16. SAME.—*Excessive.—When Reversible.*—A judgment will be reversed, on account of excessive damages, only when such dam-

ages appear at first blush to be so, or where it appears that some
improper element appeared in the assessment thereof.   p. 215.

17.   DAMAGES.—*Assessment.*—*Jury.*—*Trial Judge.*—*Abuse.*—Where
the jury has exercised its right in estimating damages, and the
trial judge has confirmed the assessment, a clear case of abuse
must be shown in order to secure a reversal on appeal.   p. 216.

18.   RAILROADS.—*Fall of Car Window.*—*Contributory Negligence.*—
A passenger, who raised a car window until the latch caught and
then, in throwing something out of the window, it fell injuring
her arm, is not guilty of contributory negligence, as a matter of
law, because, unexplained, such window had fallen, to her knowl-
edge, once before.   p. 220.

19.   SAME.—*Car Windows.*—*Care.*—A passenger on a railway train
has a right to hoist a window for any proper purpose, and to
assume that the catch with which it is equipped is sufficient to
hold when latched, railway companies being under the continuing
duty of using care to provide for the safety of their car windows.
p. 221.

From Putnam Circuit Court; *Presley O. Colliver,* Judge.

Action by Vivian Hadley, by her next friend, against the
Cleveland, Cincinnati, Chicago & St. Louis Railway Com-
pany.   From a judgment for plaintiff, defendant appeals.
Transferred from Appellate Court under §1399 Burns 1908,
Acts 1901, p. 565, §15.   *Affirmed.*

*James L. Clark, Tarvin C. Grooms, George A. Knight, L.
J. Hackney* and *Frank L. Littleton,* for appellant.

*T. S. Adams* and *S. A. Hays,* for appellee.

MONTGOMERY, J.—Appellee, suing by next friend, recov-
ered judgment for a personal injury caused while a passen-
ger on appellant's train, by the falling of a window-sash
upon her arm.

The only error assigned is the overruling of appellant's
motion for a new trial.

The motion for a new trial alleged that the verdict was not
sustained by sufficient evidence and was contrary to law;
that the damages were excessive; that the court erred in re-
fusing to give, and in giving, certain instructions.   Other
specified errors of law occurring upon the trial will be set out
and considered in this opinion.

The first sentence of the eighth instruction tendered by appellant and refused was as follows: "A common carrier of passengers must exercise the highest degree of care

1.  in providing safe appliances and cars for the transportation of its passengers; and passengers upon the cars or carriages of a common carrier must also exercise an equally high degree of care to protect themselves from injury." The latter clause of this statement was manifestly incorrect, since a passenger is required to exercise only ordinary care for his safety. 4 Elliott, Railroads (2d ed.), §1642; *Jeffersonville, etc., R. Co.* v. *Hendricks* (1866), 26 Ind. 228; *Keokuk, etc., Packet Co.* v. *True* (1878), 88 Ill. 608; *Waterbury* v. *Chicago, etc., R. Co.* (1897), 104 Iowa 32, 73 N. W. 341; *Missouri, etc., R. Co.* v. *Miller* (1894), 8 Tex. Civ. App. 241, 27 S. W. 905; *Conroy* v. *Chicago, etc., R. Co.* (1897), 96 Wis. 243, 70 N. W. 486, 38 L. R. A. 419.

Appellant, by its ninth instruction, requested the court to charge the jury that if appellee, while on a rapidly-moving car, raised the window, protruded her arm, and, while

2.  in the act of withdrawing the same the window fell, inflicting the injury complained of, she was guilty of contributory negligence and could not recover. The question of contributory negligence is usually to be determined by the jury, and it is only in a case where the facts are undisputed, and but one reasonable inference can be drawn therefrom, that the court may venture to direct a verdict. It is very clear upon the facts assumed in this instruction that the court was not warranted in saying, as a matter of law, that appellee was guilty of contributory negligence. *Schneider* v. *New Orleans, etc., R. Co.* (1893), 54 Fed. 466; *New Orleans, etc., R. Co.* v. *Schneider* (1893), 60 Fed. 210, 8 C. C. A. 571; *Farlow* v. *Kelley* (1882), 108 U. S. 288, 2 Sup. Ct. 555, 27 L. Ed. 726; *Moakler* v. *Willamette, etc., R. Co.* (1889), 18 Ore. 189, 22 Pac. 948, 6 L. R. A. 656, 17 Am. St. 717; *Summers* v. *Crescent City R. Co.* (1882), 34 La.

Ann. 139, 44 Am. Rep. 419; *Miller* v. *St. Louis R. Co.* (1878), 5 Mo. App. 471.

The third instruction, given at the request of appellee, advised the jury that if appellee was a passenger on appellant's car, and, for the purpose of throwing out fruit parings, or for other reasonable cause, raised the window until the same was locked or caught, and such window, on account of the broken, weak or defective lock or catch thereon, fell and injured appellee's arm, without fault or negligence on her part, appellant would be liable. The objection is that this instruction binds appellant for breaks of the most recent occurrence, as well as latent defects. The instruction was not given as an abstract proposition of law, but as an application of a legal principle to the concrete case before the court. Appellant did not found its defense upon the ground of this objection, or offer any evidence of an inspection of the car or its appliances previous to the accident, but insisted upon the trial that the window catch was suitable and proper, and in good condition. If the window catch was in fact broken, weak or defective, and for that reason the window fell, then, under the evidence, appellant had made no effort to discover or repair such defect; and a *prima facie* case was established entitling appellee to recover. *Breen* v. *New York, etc., R. Co.* (1888); 109 N. Y. 297, 16 N. E. 60, 4 Am. St. 450; *Holbrook* v. *Utica, etc., R. Co.* (1855), 12 N. Y. 236; *Winters* v. *Hannibal, etc., R. Co.* (1867), 39 Mo. 468. The fourth instruction given, of which complaint is made, is in principle the same as the third, and no error was committed in giving the same.

The eighth instruction, given at the request of appellee, declared the law to be that if an injury is suffered by a passenger on account of the weak, broken or defective condition of the car in which such passenger is riding, or any of the equipments and appliances connected therewith, the mere happening of such accident and injury is *prima facie* evidence of the negligence of the company own-

ing, controlling and using such car, and it will be incumbent upon the company to produce evidence which will excuse the *prima facie* failure of duty on its part. This instruction literally embodies the language of this court in the case of *Terre Haute, etc., R. Co.* v. *Sheeks* (1900), 155 Ind. 74, and the legal principle declared is supported by numerous decisions of this State, and is in accord with the conclusions of all approved authorities. Appellant's learned counsel insist, however, that the doctrine *res ipsa loquitur* does not apply where there was any action on the part of the passenger which might have contributed to produce the injury. It must be conceded that a well-recognized exception, substantially as stated, exists to the general rule. In the case of *Pennsylvania Co.* v. *Marion* (1885), 104 Ind. 239, this court held that a passenger who voluntarily left his seat and alighted upon the station platform while the train was in motion, and in so doing sustained injury, was not in a position to claim the benefit of a presumption that the carrier was guilty of negligence. The Appellate Court, upon similar facts, has announced the same holding. *Dressler* v. *Citizens St. R. Co.* (1898), 19 Ind. App. 383; *Pittsburgh, etc., R. Co.* v. *Aldridge* (1901), 27 Ind. App. 498. A mere statement of the circumstances attending the accident clearly and broadly distinguishes those cases from the one at bar. In the cases cited the controversy was as to what was the negligent act proximately causing the injury; and no claim of defective cars, equipment or appliances was fairly or properly presented. While in this case the real dispute is, not whether appellee was guilty of contributory negligence, but whether the window catch was in fact weak, broken or defective. There could be no question of appellee's right to hoist the window, without any imputation of negligence, and the fact is shown without conflict in the evidence that she raised the sash with due care, to the full height, and until it was latched. It does not, therefore, appear from a mere recital of the incident, or upon the whole case, that the question of

appellee's contributory negligence was so involved as to take this case out of the general rule that a passenger injured without his fault, by a defective appliance of the carrier's, has a *prima facie* right of recovery.  Our conclusion is that the instruction was applicable to the case made out by the evidence, and was in form and substance proper.

This instruction states the general proposition that the happening of an injury to a passenger because of defective appliances creates a *prima facie* case of failure in the performance of duty on the part of the carrier, as before shown, and concludes as follows: "Or, in other words, the company has the burden of proving, in order to rebut the presumption of negligence, under the circumstances, that the accident could not have been avoided by the exercise of the highest degree of practical care and diligence."  Objection is made to the use of the word "burden" in this connection, and it is correctly argued that appellant, under the answer of general denial, did not at any stage of the trial have the burden of disproving the negligence charged by appellee in the complaint.  It is clear upon principle that appellee, having alleged actionable negligence, must assume and bear throughout the proceeding the burden of establishing the charge preferred.  In this action she made a *prima facie* case by the aid of the legal presumption arising from the doctrine *res ipsa loquitur*.  In finally determining the issue as to appellant's negligence, the jury must weigh presumptions, testimony and proofs of every character in the light of the principle that the burden of proof was upon appellee, and if, on the whole, the scale did not preponderate in favor of the presumption and against all countervailing evidence, appellee must fail.  *Pittsburgh, etc., R. Co.* v. *Higgs* (1906), 165 Ind. 694, 708, 4 L. R. A. (N. S.) 1081; *Terre Haute, etc., R. Co.* v. *Sheeks, supra; Cleveland, etc., R. Co.* v. *Newell* (1885), 104 Ind. 264, 274, 54 Am. Rep. 312; *Kay* v. *Metropolitan St. R. Co.* (1900), 163 N. Y. 447, 57 N. E. 751.  Reading the instruction under consideration

as an entirety, it is plain that the word burden was used in this instance in the sense of duty or obligation, and when so read the instruction is not subject to criticism. We are not to be understood as condemning this part of the instruction, in any event. It is the law, as already stated, that when appellee showed that she was injured without her fault, from a defective appliance of the car in which she was being transported as a passenger, a presumption of negligence arose against appellant, and remained for her benefit until negatived and overthrown by proof of other facts. In addition to disputing the evidence which appellee offered, appellant might relieve itself of this presumption of

6. negligence by producing evidence of collateral facts explaining the immediate cause of the accident and showing that in the conduct of its business it had used the highest practical skill, prudence and circumspection; but, notwithstanding, the cause of the accident was such that it was not and could not reasonably have been discovered and obviated. A *prima facie* case having been made out by the aid of the legal presumption of negligence, appellant had the burden of establishing the existence of all the separate collateral facts, which might be necessary to explain the cause of the accident and to demonstrate the use of proper diligence and care in the maintenance of its cars and appliances in a condition of safety. *Cleveland, etc., R. Co.* v. *Newell, supra;* Thompson, Carriers, 210, 211.

The tenth instruction given related to the consideration to be given to the opinions of expert witnesses, and was clothed in the language of instructions considered and approved in the following cases: *Guetig* v. *State*

7. (1879), 66 Ind. 94, 32 Am. Rep. 99; *Goodwin* v. *State* (1884), 96 Ind. 550. There was evidence making such instruction appropriate, and no error was committed in giving the same.

Emma Hadley, appellee's mother, was asked: "What effect had the treatment upon her [plaintiff's] arm, if any?"

Appellant objected, upon the ground that the question called for a conclusion, and not for facts. This objection was clearly untenable, and the witness was rightly permitted to answer the question. She had witnessed the treatment and observed the visible effects, if any resulted, and might properly state to the jury such facts as were within her knowledge. *Stamets* v. *Mitchenor* (1906), 165 Ind. 672; *Boyle* v. *State* (1886), 105 Ind. 469, 55 Am. Rep. 218.

Appellant objected to the following question propounded to appellee's father: "What was her ability in the line of teaching in the profession of elocution, or giving elocutionary entertainments?" It is urged that this question calls for an opinion, where an opinion is not competent evidence, and that the witness was not shown to be qualified to express such an opinion. The ability of a neophyte or of a professor in elocutionary work may be shown by the opinions of those qualified to testify, and the father is *prima facie* qualified to pass an opinion upon the elocutionary ability of his own daughter. The jury are the ultimate judges of the weight to be given such evidence, and will take into account the primary facts upon which the opinion is based, as well as the relationship of the parties.

The last witness was permitted to answer the following: "Tell the jury whether the condition of your daughter's arm is better or worse at this time than it was six months ago." This witness had testified to the condition of appellee at the times covered by the question. The important fact to be determined was whether the injury was permanent or curable, and it was not error to allow him to answer this question. *Swygart* v. *Willard* (1906), 166 Ind. 25; *Louisville, etc., R. Co.* v. *Wood* (1888), 113 Ind. 544, 553; *Cleveland, etc., R. Co.* v. *Gray* (1897), 148 Ind. 266, 277; *Carthage Turnpike Co.* v. *Andrews* (1885), 102 Ind. 138; *Louisville, etc., R. Co.* v. *Holsapple* (1895), 12 Ind. App. 301.

Appellant complains because appellee was permitted, on

cross-examination, to inquire as to the amount of monthly salary received by appellant's conductor. Anything tending to affect the credibility of a witness may be shown, and this inquiry cannot be said to be so remote or irrelevant as to be manifestly improper. The extent to which cross-examination may be carried is largely in the discretion of the trial court, and must be determined by the relation and apparent character and bearing of the witness under examination, and the circumstances attending the particular case on trial. We are unable to say that the discretion of the court was abused in this instance. *Swygart* v. *Willard, supra; Shields* v. *State* (1897), 149 Ind. 395; *McDonald* v. *McDonald* (1895), 142 Ind. 55, 72; *Pennsylvania Co.* v. *Newmeyer* (1891), 129 Ind. 401, 405; *White Sewing Machine Co.* v. *Gordon* (1890), 124 Ind. 495, 496, 19 Am. St. 109; *Hinchcliffe* v. *Koontz* (1890), 121 Ind. 422, 425, 16 Am. St. 403; *Bessette* v. *State* (1885), 101 Ind. 85, 88; *Wachstelter* v. *State* (1885), 99 Ind. 290, 295, 50 Am. Rep. 94; *Ledford* v. *Ledford* (1884), 95 Ind. 283, 285.

The court permitted appellant's car inspector to state, over objection, that if he pushed the window up and it remained he would be satisfied that the stop had caught, but no exception was saved to the ruling, and hence no question is presented for our decision. *Adams* v. *Board, etc.* (1905), 164 Ind. 108.

It is alleged in the motion for a new trial that the court erred in permitting counsel for appellee, in argument to the jury, to make certain specified statements, and this ground of the motion is supported by the affidavits of appellant's counsel. Counter-affidavits were filed reciting the language used. It must also be remembered that the facts were within the personal knowledge of the trial judge, and, having determined the issue respecting the real occurrence upon conflicting evidence, we cannot disturb his conclusion. *Pittsburgh, etc., R. Co.* v. *Collins* (1907), 168 Ind. 467.

Conceding that, in the most favorable view, the language used was improper, it appears further that appellant's counsel were personally present, and at the time made no objection to the same. The rule is firmly established that a party feeling aggrieved by any incident in the progress of a trial must make his objection known at the earliest opportunity, so that the error, if any, may be promptly cured. Silence, when there is an opportunity to speak, operates as a waiver of objections to irregularities and abuses, which, if seasonably made and presented, might be regarded as prejudicial. This alleged error is effectually disposed of by the holding in *Southern Ind. R. Co.* v. *Fine* (1904), 163 Ind. 617, where it is said, that, in such circumstances as here shown, a duty devolved upon appellant's counsel to bring the matter directly to the attention of the court, to state the ground of objection specifically, if reasonably required, and, if the wrong be not incurable, to request the court to admonish the jury to disregard the objectionable language. If, then, the court refuse to sustain a proper motion respecting such improper argument, an exception must be reserved to the action or nonaction of the court. A failure of the court to admonish the jury at the time was, under the facts shown, as much the fault of appellant's counsel as of the court, and an objection made for the first time after verdict cannot avail appellant. *Morrison* v. *State* (1889), 76 Ind. 335, 338; *Hemming* v. *State* (1886), 106 Ind. 386, 393, 55 Am. Rep. 756; *Coleman* v. *State* (1887), 111 Ind. 563, 567; *Grubb* v. *State* (1889), 117 Ind. 277, 283; *Staser* v. *Hogan* (1889), 120 Ind. 207, 222; *White* v. *Gregory* (1890), 126 Ind. 95, 98; *Drew* v. *State* (1890), 124 Ind. 9, 12; *Reed* v. *State* (1895), 141 Ind. 116, 119; *Lingquist* v. *State* (1899), 153 Ind. 542; *Coppenhaver* v. *State* (1903), 160 Ind. 540. No charge of misconduct of the prevailing party was made in the motion for a new trial, and we are not called upon to view the matter from that standpoint. *Choen* v. *State* (1882), 85 Ind. 209, 213.

The jury awarded appellee $10,000 damages, and this is claimed to be excessive. Appellee was twenty years of age at the time of the accident, strong, healthy and active, skilled in household work, fond of driving and athletic games, well educated, competent to perform upon the piano, specially trained in elocution, and qualified to teach and give elocutionary and Delsartian entertainments, and had just commenced teaching a small class in elocution. The injury was upon the elbow joint, affecting chiefly the ulnar nerve. It was extremely painful, necessitating the use of opiates to produce sleep, and was still painful at the time of the trial. The injury resulted in a sleepy, numb feeling in the arm, and in the little and ring fingers, which feeling still remains. The muscles of the arm became and remained soft, flabby and shrunken in size, and the power to grip and hold anything securely in the left hand was lost, so that appellee cannot comb her hair or make her own toilet, cannot help at house work, or play the piano, and was compelled to abandon elocutionary and Delsartian exercises. She is nervous, often sleepless, has little appetite, and is somewhat reduced in flesh. The accident occurred on September 24, 1904, and the trial was held September 22, 1905. The medical treatment of the injury had no perceptible effect, there was no improvement, and conditions were rather worse than better, physicians being unable to foretell or promise when, if ever, recovery would occur, but regarded the outlook as unfavorable.

The general principle is well established that this court will not reverse the judgment of the court below in refusing to grant a new trial on the ground of excessive damages, unless, at first blush, the damages assessed appear to be outrageous and excessive, or it is apparent that some improper element was taken into account by the jury in determining the amount. *City of Michigan City* v. *Phillips* (1904), 163 Ind. 449; *Indianapolis St. R. Co.* v. *Schmidt* (1904), 163 Ind. 360; *Illinois Cent. R. Co.* v. *Cheek*

(1899), 152 Ind. 663; *Ohio, etc., R. Co.* v. *Judy* (1889), 120 Ind. 397; *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533; *Evansville, etc., R. Co.* v. *Talbot* (1892), 131 Ind. 221; *Carthage Turnpike Co.* v. *Andrews* (1885), 102 Ind. 138, 52 Am. Rep. 653; *Farman* v. *Lauman* (1881), 73 Ind. 568; *Town of Westerville* v. *Freeman* (1873), 66 Ind. 255; *Yater* v. *Mullen* (1864), 23 Ind. 562; *Picquet* v. *McKay* (1831), 2 Blackf. 465.

The determination of the extent of the injury complained of, and the proper compensation therefor, were peculiarly within the province and power of the trial jury, and 17. when its judgment has been fairly obtained, and, in the light of all the incidents of the trial, confirmed by the presiding judge, an abuse of this right and power must be clearly manifest to warrant an appellate court in disturbing the judgment on the ground of excessive damages. *Hudelson* v. *Hudelson* (1905), 164 Ind. 694; *Creamery, etc., Co.* v. *Hotsenpiller* (1902), 159 Ind. 99; *Mead* v. *Burk* (1901), 156 Ind. 577; *Lee* v. *State* (1901), 156 Ind. 541. A more grievous misfortune could scarcely be presented than an accident to a cultured young woman, in perfect health, and of joyous and hopeful disposition, just entering upon an independent career of usefulness and honor, by which she is in a moment deprived of the use of her attainments for profit or pleasure, her ambition is destroyed, her disposition changed, her countenance rendered haggard, she becomes nervous and irritable, and is left a dependent invalid to bear a burden of pain by night and by day, with no assurance of cessation except by death. It is clear that we are without warrant for disturbing the judgment on the ground of excessive damages. *Pittsburgh, etc., R. Co.* v. *Simons* (1907), 168 Ind. 333; *Cleveland, etc., R. Co.* v. *Miller* (1905), 165 Ind. 381; *Louisville, etc., R. Co.* v. *Miller, supra; Carthage Turnpike Co.* v. *Andrews, supra; City of Michigan City* v. *Phillips, supra.* There was abundant evidence from which the jury might find that the window fell

on account of an insufficient and defective catch, as alleged, and no evidence that appellant had made any effort prior to the accident to discover or repair such defect. The verdict was sustained by sufficient evidence and was not contrary to law, and no error was committed in overruling appellant's motion for a new trial.

The judgment is affirmed.

Hadley, J., did not participate in this decision.

## ON PETITION FOR REHEARING.

MONTGOMERY, J.—Appellant's counsel have filed an earnest petition for a rehearing in this case, and in support thereof have vigorously reargued many of the questions 4. originally presented. It is very properly conceded that the decision announced and the merits of the case center around the eighth instruction given by the trial court, which explained the application of the doctrine *res ipsa loquitur* to appellee's view of the facts established. That part of the instruction now under consideration reads as follows: "Where a passenger, while on the company's train, received an injury on account of the derailment of the train, the breaking down of the roadbed, or on account of the weak, broken or defective condition of the car provided by the company, or on account of the weak, broken or defective condition of any part of such car, or any of the equipments or other appliances connected therewith, owned or controlled by such company, and used by it in the operation of its road, the mere happening of such accident and injury of the passenger is, at least, *prima facie* evidence of the negligence of the company, and it will be incumbent upon the company to produce evidence which will excuse the *prima facie* failure of duty on its part." It will be observed that by this instruction the court did not advise the jury that the mere happening of an accident to a passenger upon a railway train created a presumption of negligence on the

part of the carrier; but the statement, in substance, is that if a passenger receives an injury on account of the weak, broken and defective condition of any appliance connected with a car owned, controlled and used by the carrier, and in which such passenger is being transported, the happening of the accident is *prima facie* evidence of the negligence of the company. The maintenance of the defective window latch, to which appellee's injury was attributed, was undeniably within the exclusive control and supervision of appellant. If it was in fact weak, broken or defective as alleged, and for that reason the window fell and inflicted the injury for which this action was brought, as stated in the instruction, then there can be no serious dispute that a *prima facie* case of negligence was established. The instruction was therefore not erroneous in form and substance.

The instruction was applicable to appellee's theory of the case and view of the evidence. The evidence of appellee with respect to hoisting the window was in part as follows: ''Q. How high did you push the window? A. As high as it would go. Q. How do you know? A. Because I know I did. I was watching the window and saw it catch. Q. Tell the jury how high you raised it. A. I raised the window as high as I could, until it caught. Q. Did you raise it the full length of the window? A. I did. Q. Until the lower part of the window was level with the lower part of the upper sash? A. Yes, sir. Q. You observed that, did you? A. Yes, sir. Q. Did you hear any clicking noise? A. I felt it catch. Q. When you raised the sash up, do you tell the jury that you were looking at the catch? A. I was. Q. Looking at it all the time you were raising it? A. Yes, sir. Q. Are you able to tell whether it caught or not? A. I am. Q. How can you determine that when you do not know anything about the catch? A. I felt it catch, and saw it catch.'' Chester C. Hadley, who was sitting in the seat immediately behind appellee at the time, testified that she raised the window until it gave a

sound like a latch clicking, and that he remembered distinctly of the clicking of the latch just before he started to hand appellee the fruit parings.

These statements were not directly disputed nor denied. If they were true, the inevitable inference followed that the window catch must have been weak, broken or defective, as claimed. Appellant made no showing that the car or its appliances had ever been inspected from the time of construction until after this accident, but rested its defense primarily upon the assumption that the catch was sound, strong and suitable for its intended use. The catch was tested after the accident by the conductor and others, and there was evidence that upon the first test the conductor remarked "loose catch," or words to that effect. There was some dispute in the evidence as to whether the catch held the window at all times, or failed to work at times upon these tests, and upon the whole evidence the jury found that the catch was weak, broken or defective as alleged.

In appellant's original brief it was only asserted in argument, as an inference from the chief contention, that the catch was sound and perfect, that therefore appellee must not have raised the window to its full height; and among the points stated it was not claimed that she was guilty of contributory negligence in this respect. The only point made upon the subject of contributory negligence was as follows:

"Plaintiff's Contributory Negligence.

(7)

If the plaintiff's negligence contributed to her injury she cannot recover. A passenger is as much bound to use reasonable care to avoid injury as the carrier is to use the greatest degree of skill and care to save the passenger from harm. Railway coaches are provided with windows to promote the health of passengers, by affording light and ventilation, and to relieve the tedium of the journey by viewing objects along the route, and the place for the passenger's arms is inside, not outside the coach. *Indianapolis, etc., R. Co.* v. *Rutherford* [1867], 29 Ind. 82, 92 Am. Dec. 336."

It was shown by the evidence that when appellee entered the coach in St. Louis the window was up, and while crossing the bridge over the Mississippi river it fell. Appellant's counsel insisted that this circumstance constituted a warning to appellee, and that the subsequent protrusion of her arm from this window was contributory negligence. Instructions to this effect were tendered and refused.

If appellee's arm had been injured by the first falling of the window sash, the case of *Faulkner* v. *Boston, etc., Railroad* (1905), 187 Mass. 254, 72 N. E. 976, urged upon our attention with apparent confidence, would have been in point, and an influential authority. In that case the court very properly held that in an action for injuries to a passenger caused by the fall of a car window when the train started of its usual motion, it appearing that the window and attachments were in good order, and that the fall must have been due to its not having been properly fastened, and there being no evidence that defendant's employes raised the window, plaintiff could not recover

The case of *Strembel* v. *Brooklyn Heights R. Co.* (1905), 96 N. Y. Supp. 903, is to the same effect, and in which it is said: "The fall of the window cannot be attributed to defective construction any more than to the failure of the last passenger who raised it to put it all the way up, so as to have it engage the catch, or to see that it did engage the catch firmly." The case of *Goss* v. *Northern Pac. R. Co.* (1906), 48 Ore. 439, 87 Pac. 149, was ruled by the same principle. The court said: "The evidence as given on the trial was so clear and convincing that the accident was not due to the negligence charged in the complaint as to completely overcome any presumption which may have risen from the mere happening of the accident."

An approved general statement of the application of the doctrine *res ipsa loquitur* is found in the case of *Price* v. *St.*

*Louis, etc., R. Co.* (1905), 75 Ark. 479, 88 S. W. 575, 112 Am. St. 79, cited in appellant's brief, and is as follows: " 'The true rule would seem to be that when the injury and circumstances attending it are so unusual, and of such a nature that it could not well have happened without the company's being negligent, or when it is caused by something connected with the equipment or operation of the road, over which the company has complete control, a presumption of negligence on the part of the company usually arises from proof of such facts, in the absence of anything to the contrary, and the burden is then cast upon the company to show that its negligence did not cause the injury.' " It is manifest even from appellant's contentions that the unexplained falling of the window while crossing the bridge was not sufficient to charge appellee with knowledge that the catch was defective and to subject her to an imputation of contributory negligence in thereafter using the window. Her injury was not the result of allowing her arm to come in contact with an outside object near the track, as was the case in *Indianapolis, etc., R. Co.* v. *Rutherford, supra.*

Appellee had a right to hoist the window for any proper purpose, and to assume that the catch with which it was equipped was suitable and sufficient to hold it when latched. The evidence before set out affirmatively shows that she raised the window until the latch caught, and, assuming the truth of this statement, the fall could only have occurred because the latch was defective and insufficient in some respect. This was an appliance of the car over which the appellant was required to exercise continuing oversight and care. The court therefore correctly instructed the jury that if the accident and resultant injury were occasioned by reason of a defect in this appliance, a *prima facie* case of negligence was established, and it was incumbent upon appellant to produce evidence which would excuse such apparent failure of duty. We have re-

examined all the questions raised by the petition for a rehearing, and find no reason to depart from the holdings announced in the original opinion.

Appellant's petition for a rehearing is therefore overruled.