Geraldine TURNEY, Appellee,

v.

Robert D. ANSPAUGH, Appellant.

No. 48900.

Supreme Court of Oklahoma.

July 5, 1978.

Howard K. Berry, Howard K. Berry, Jr., Berry & Berry, Oklahoma City, for appellee.

George F. Short, Nancy C. Laughlin, Oklahoma City, Cliff Conkle, Legal Intern, for appellant; Pierce, Couch, Hendrickson & Short, Oklahoma City, of counsel.

LAVENDER, Vice Chief Justice:

Geraldine Turney was the patient of Robert D. Anspaugh, an M.D. and surgeon. A decision was made for an elective surgical procedure consisting of a hysterectomy. During surgery, the procedure was changed from a vaginal to an abdominal approach due to a small mass discovered near the uterus early in the operation that the surgeon preferred not to disturb so as to prevent any possibility of spreading cancerous cells. This change required new operating preparation including additional sponges.

Patient became concerned as to her postoperative condition including abdominal pains, incision discharge, and a lump below the umbilicus. The surgeon suggested these problems were not unusual with this type of surgery. Some two months after surgery, patient went to another doctor. In trying to determine if the problem was a gallstone, that doctor took an x-ray showing an opaque marking similar to that contained in a surgical sponge. He immediately operated. He found and removed a small surgical sponge with no ring attached below the umbilicus and not too deep. After that procedure, the patient still had problems, with the last surgeon subsequently performing a gallbladder operation.

Patient brought a medical malpractice action against the first surgeon, the assisting surgeon, and the hospital that had furnished the scrub technician and circulating nurse as part of the operating team. Defendants denied any liability, with the hospital raising the special defense of "loaned servants" to the surgeon as to its employees, the scrub technician and the circulating nurse. Trial was to a jury. Jury verdict returned for money damages in the amount of $50,000 for patient as against the surgeon with no judgment entered against the assisting surgeon or the hospital. Surgeon appeals.

Record on appeal shows that surgical sponges are used in the surgical wound to pack internal organs away from the surgical site and to absorb body fluids hindering the surgeon's view. A ring is generally attached to the sponge and remains outside the surgical wound as an aid in locating the

sponges for removal prior to closing. Four counts are made of the sponges. The first count occurs with four to a package when sterilized by hospital supply. All other counts are made together by the scrub technician and the circulating nurse. The second count occurs with the placing of the sponges for a particular operation prior to the beginning of the operation. The third count occurs on the surgeon commencing closure. The fourth and final count occurs at completion of the closure. The scrub technician, being sterile and working in the sterile field with the surgeons, hands the sponges to the surgeon as the surgeon calls for them. On removal by the surgeon, the sponges are placed in the "kick bucket." The circulating nurse retrieves the sponges from there and retains them for the subsequent two counts. If the count is incorrect, the sponge is located prior to closing. Portable x-ray may be used in the search with each sponge containing an opaque string for that purpose.

The hospital furnished the surgical facilities, supplies, and two of its employees, the scrub technician and the circulating nurse, as part of the operating team. During the operation, these two employees were under the direction of the surgeon.

Here, principal conflict in testimony is between the surgeon and the hospital through its witness employees, the scrub technician and the circulating nurse. Written instructions of this particular surgeon for this kind of a procedure required a ring to be attached to all sponges, except one. On the last two counts, this surgeon was to be reminded of a sponge in the vagina. This was to be the one without a ring and could be removed after closing. The scrub technician testified the sponge without the ring was given to the surgeon, but does not know if the surgeon placed it in the vagina. Evidence agreed that early in the abdominal procedure the opening to the vagina from the abdomen is closed and a sponge placed in the vagina could not migrate to the area of the umbilicus. The surgeon says the circulating nurse advised him the "count" was correct. The circulating nurse testified she told the surgeon the "count" was correct with one in the vagina.

On appeal, surgeon argues law questions as to incorrect instructions given by the trial court to the jury, failure to require expert testimony as to negligence in the post-operative care, and failure to allow additional testimony to rebut evidence of the codefendant hospital.

Basic complaint as to the instructions centers around No. 5,[1] with its application of "res ipsa loquitur," and No. 6,[2] with its application of the "loaned servant," and in

1. Instruction No. 5 reads:

"The mere receipt of an injury connected with a surgical operation in a hospital does not, ordinarily, create a presumption of negligence as to any party connected with the performance thereof. But when a patient in surgery, unconscious as the result of anesthesia furnished for the said surgery, sustains an accidental injury as the direct result of an act or omission which is of a nature that, in the ordinary course of affairs, would not have occurred if proper care had been exercised, it will be presumed that those persons in control, and having the responsibility for the reasonably proper and skillful completion of the surgery including the maintenance of a reasonably safe count of materials used and the removal of foreign objects from, and the closure of, the incision, were negligent. You are instructed, however, that such presumption of negligence may be rebutted, and overcome, by a preponderance of the evidence which would show to

your satisfaction that said persons or parties were not guilty of negligence.

"In this connection, you are instructed that the defendants had the duty as hereinbefore defined, of exercising ordinary care in the performance and completion of the operation, including the counting of and the removal of foreign objects from the operated wound, and the closing of the surgical incision which had been made into the plaintiff's abdomen, in accord with that degree of care previously defined herein; that the presumption of negligence, as defined herein, exists against said defendants and in favor of the plaintiff. The burden of proof as the same has been defined in these instructions is on the defendants to prove that they were not guilty of negligence."

2. Instruction No. 6 reads:

"You are instructed that if, under all of the evidence in this case, you find that the acts of the nurses and technicians in producing, steri-

the instructions not being clear, for "res ipsa loquitur" at most is limited to the surgery and not applicable to the postoperative care.

■ This court recognized in *St. John's Hospital & School of Nursing v. Chapman,* Okl., 434 P.2d 160 (1967) that the doctrine of "res ipsa loquitur" may apply in medical malpractice actions. There, as here, proof of any negligence is peculiarly within the power of the defendants and beyond the power of the patient. The doctrine is a rule of evidence only with the inference of negligence rebuttable, and the weight of any rebuttal evidence offered to overcome the inference is left for the jury.[3]

Instruction No. 5 speaks of "presumption" of negligence. It allowed that presumption to be overcome and rebutted through a preponderance of the evidence with the burden of proof now shifted by the presumed negligence to the one seeking to rebut with evidence to be gaged as the

"preponderance" or that is the evidence a juror believes to be the most convincing and seems most probably true. See also Instruction No. 3.[4]

■ Surgeon contends the use of "presumption of negligence" rather than "inference of negligence" in Instruction No. 5 requires reversal. A similar objection was made in *Merriman v. Kraft,* 253 Ind. 58, 249 N.E.2d 485, 490 (1969) as to a res ipsa loquitur instruction. Though the opinion, as do we, recognized the term "inference of negligence" is desirable, it refused to accept that phrase as such a term of art so as to require reversal on use of "presumption of negligence." "It is evident that the terms 'inference' and 'presumption' are *in common usage practically synonymous * *."* (Emphasis added.) *Merriman, supra,* 491. Although *Merriman* pointed out "inference" had been used three times and "presumption" once in the res ipsa loquitur instruction, for these purposes we follow the common understanding of the terms as being

lizing, counting and recounting the surgical sponges used in the operation were administrative in nature and being done as the agents of the defendant BAPTIST HOSPITAL, and within the scope of such agency and employment, then the said BAPTIST HOSPITAL would be responsible and liable for damage, if any, resulting from any negligent acts or omissions performed or acquiesced in by the said nurses and technicians. On the other hand, if you find that the acts of said nurses and technicians in sterilizing, counting and recounting said sponges were professional in nature and being performed as the agents of the defendant surgeons as loaned servants, as the loaned servant doctrine has been defined in these instructions, then the legal liability for the damage, if any, resulting from any negligent sponge count, would be imputed to the defendant surgeons, and not to the defendant hospital. And further, if you find that the acts of the said nurses and technicians in counting and recounting said sponges did not amount to an abandonment of the duties of their original employment, and the services which they performed thereafter were in the furtherance of the mutual interest of both the defendant hospital and the defendant surgeons to accomplish a common purpose, then the legal liability for the damage, if any, resulting from any negligent sponge count would be imputable to both the defendant hospital and the defendant surgeons."

3. *St. John's Hospital & School of Nursing, supra,* Syllabus 5 and 6 by the court reads:

"The rule of res ipsa loquitur is a rule of evidence only. The inference of negligence on the part of the defendant, which arises under the rule is rebuttable. It may be overcome by a satisfactory explanation offered by the defendant.

"Ordinarily, the weight of the rebuttal evidence offered by the defendant to overcome the inference of negligence on the part of the defendant, which arises under the doctrine of res ipsa loquitur, is for the jury. Unless all reasonable minds are bound to reach the same conclusion, it is the jury, in a jury trial, that is to determine whether or not the explanation offered by the defendant is 'satisfactory' enough to overcome the inference of negligence, even though the defendant's evidence be undisputed."

4. Instruction No. 3 reads in part:

"By a 'preponderance of the evidence' as the term is used in these instructions, is not necessarily meant the greater number of witnesses testifying to a fact or state of facts, but means that evidence which to your minds is most convincing and seems most probably true."

practically synonymous, as therein discussed.[5] We do not reverse because Instruction No. 5 contained "presumption of negligence" instead of the more desirable term "inference of negligence."

■ The surgeon objects to the shifting of the burden of proof under Instruction No. 5. Again, a similar objection was made in *Merriman, supra,* p. 491. There, the court reasoned that with the establishment of a prima facie case by the aid of the doctrine of res ipsa loquitur then the burden shifted to establish a rebuttal of that case.[7] As in *Merriman,* we do not reverse on Instruction No. 5, for the surgeon could rebut the presumed negligence by proving by a "preponderance of the evidence," as defined in Instruction No. 3, ordinary care in conjunction with surgical procedure as stated to be his duty in Instruction No. 5.

■ Nor do we agree with the contention the instructions are not clear the doctrine of

---

**5.** *Merriman, supra,* p. 490, 491.

"This position is further buttressed by Indiana cases which use the term 'presumption of negligence' when speaking of the doctrine of res ipsa loquitur.

' * * * The inference of negligence or, as sometimes stated the "presumption" * * ' *New York, Chicago & St. Louis R.R. Co. v. Henderson,* supra, 237 Ind. 456 at 466, 146 N.E.2d 531 at 537.

*     *     *     *     *     *
(Our omission)

"Instruction No. 9, when read as a whole, correctly instructed the jury as to the doctrine of res ipsa loquitur. The use of the term 'presumption of negligence' when used interchangeably and with the same intended meaning as the term 'inference of negligence' did not so prejudice the appellant as to constitute reversible error.

"Black's Law Dictionary, 4th Edition, defines presumption as follows:

'An *inference,* affirmative or disaffirmative, of the existence of a disputed fact * * *' (Our emphasis.)

"Webster's Third International Dictionary defines presumption as:

'An *inference* as to the existence of a fact not certainly known from the known or proved existence of some other fact.' (Our emphasis.)

"It is evident that *the terms 'inference' and 'presumption' are in common usage practically synonymous* [6] and we believe in the context used in the instruction complained of it conveys a meaning of a permissible deduction which the triers of the fact may or may not accept, as they see fit."

[6] Emphasis added.

**7.** *Merriman, supra,* p. 491, 492:

" * * * The appellant claims that the instruction has the effect of relieving the plaintiff from the burden of proof. We do not believe the instruction had this effect. The doctrine of res ipsa loquitur is a rule of evidence which allows an inference of negligence to be drawn from certain surrounding facts. *New York, Chicago, St. Louis R.R. Co. v. Henderson,* su-

pra. As the appellant admits in her brief, where the doctrine is applicable it merely shifts to the defendant the burden of coming forward with evidence of evaluation.

"In *Cleveland, etc., R. Co. v. Hadley* (1907), 170 Ind. 204, 210, 82 N.E. 1025, 1028, 84 N.E. 13, 16 L.R.A.,N.S., 527 the court gave an instruction in a res ipsa loquitur case which stated:

'Or, in other words, the company has the burden of proving, in order to rebut the presumption of negligence, under the circumstances, that the accident could not have been avoided by the exercise of the highest degree of practical care and diligence.'

"The appellant objected to the use of the word 'burden' and argued that this instruction shifted the burden of proof. This Court rejected appellant's contention. In that case, as in the present case, the plaintiff had, with the aid of the doctrine of res ipsa loquitur, established a prima facie case. The court stated that when the instruction was read as a whole ' * * * it is plain that the word "burden" was used in this instance in the sense of duty, or obligation, and when so read, the instruction is not subject to criticism.' *Cleveland, etc., R. Co. v. Hadley,* supra, at 211, 82 N.E. at 1028.

"The court reasoned in that case that a prima facie case of negligence having been established, ' * * * appellant had the *burden* of establishing the existence of all separate collateral facts, which might be necessary to explain the cause of the accident and to demonstrate the use of proper diligence and care * * *.' *Cleveland, etc. R. Co. v. Hadley,* supra, at 211, 82 N.E. at 1028.

"While the fact situations in the present case can be distinguished from the one confronting the court in the *Cleveland etc., R. Co.* case, the court's reasoning would be applicable to the present case. The phrase 'burden of proving' when the instruction is read as a whole only places upon the appellant the duty or obligation of presenting evidence to show that the accident 'was not caused by any lack of reasonable care on his part.' *Berry v. State* (1968), Ind., 242 N.E.2d 355."

res ipsa loquitur, as contained in Instruction No. 5, is not applicable to the post-operative diagnosis and care of the surgeon. Instruction No. 5 addresses only the surgical operation and is the only instruction containing the res ipsa loquitur doctrine. See n. 1. The duty of reasonable care in the postsurgical diagnosis and care is addressed in Instructions 7 and 21.[8] These two instructions make no reference to Instruction No. 5 or contain any language that could suggest the legal duty of the postsurgical diagnosis and care should contain the doctrine of res ipsa loquitur or be controlled by Instruction No. 5. We do not reverse under that objection.

As to Instruction No. 6,[9] the argued error relates to a division of services furnished to patient as "administrative" or "professional." Instruction 12[10] advised the jury an "administrative service" was a service furnished by the hospital in receiving and caring for the patient with the performance not requiring the exercise of professional discretion or judgment of doctors. The surgeon contends that division is based on an early New York case now overruled. Patient says the instruction, at most, was harmless error.

■ The trial evidence reflects one of the contended defense positions of the surgeon was that the sponge count, accomplished by the hospital employees as a support service and over which the surgeon had no control, was incorrect. Instruction 6, in conjunction with Instruction 12, allowed the jury to consider that position. The instructions allowed the jury to find patient's problems and damages were due to "administrative services" impliedly contracted for by the patient from the hospital. See Instruction No 13.[11] We note at 29 A.L.R.3d 1065, 1078 modern authorities from jurisdictions other

8. Instructions 7 and 21 read substantially the same:

"No. 7. You are instructed that the law imposes upon a physician or surgeon the same degree of responsibility in making a diagnosis of a case or condition as in prescribing and administering treatment to an accepted patient. If you find and believe from the evidence that the defendants DR. ANSPAUGH and DR. RIDGEWAY, or either or both of them, failed to exercise reasonable care in diagnosing the plaintiff's condition, post-surgically, and discovering the presence of the foreign material in her body during the approximate two month interval, and that as a result thereof the plaintiff suffered injury and damage, then you may consider same in determining, whether or not the defendant surgeons, DR. R. A. ANSPAUGH and ELMER RIDGEWAY, were negligent, as that term has been defined herein."

"No. 21. The law imposes upon a physician or surgeon the same degree of responsibility in making a diagnosis of a case or condition as in prescribing and administering treatment to an accepted patient. If you find and believe from the evidence that the defendants DR. ANSPAUGH and DR. RIDGEWAY failed to exercise reasonable care in diagnosing the plaintiff's condition, post-surgically, and discovering the presence of same during the two month interval, and that as a result thereof the plaintiff sustained injury and damage, then you may consider same in determining whether or not the defendants ANSPAUGH and RIDGEWAY were negligent, as that term has been defined herein.

based on the preponderance of the evidence as defined in these instructions, you may find that one or both, or that neither of said doctors were negligent in the post-surgical care of the plaintiff."

9. See n. 2, supra.

10. Instruction No. 12 reads:

"You are further instructed in this regard that an 'administrative act or service," as used in these instructions, is set out in contra-distinction to the term 'professional service' as it is used in connection with the defendant doctors. It means the services furnished by a hospital in receiving and caring for patients, and the performance of those functions which do not require the exercise of professional discretion or judgment."

11. Instruction No. 13 reads:

"You are further instructed that the duty of care which a hospital owes a patient, as herein defined, is based upon a proprietor and patron relationship created by the patient's application for hospital care, the acceptance of the patient by the hospital, and an implied agreement between the parties that a prescribed commercial rate will be paid by one and that reasonable care and attention under existing circumstances will be furnished by the other. Such a transaction does not include, or cover, the fees of a doctor or surgeon who may be engaged by the patient to furnish general or special professional care during the hospitalization period. Accordingly, a hospital may not be held legally

than New York applying an understanding of "administrative service" said by the surgeon in present case to be based on an overruled New York case. For that reason, we do not quarrel with the division of services between administrative and professional in the instructions given by the trial court, here. We agree with the patient's position that the use of "administrative or professional services" in Instruction No. 6, as defined in Instruction No. 12, was not reversible error.

The "loaned servant doctrine" was pled by the hospital. Evidence established the scrub technician and circulating nurse to be employees of the hospital who were under the direct control of the surgeon during the operation. The trial court was required to instruct on that doctrine as recognized in Oklahoma. *Aderhold v. Bishop,* 94 Okl. 203, 221 P. 752 (1923). *Aderhold, supra,* applied the doctrine in a similar case to the present one and made the surgeon liable for a negligent act during surgery of a nurse employed and furnished to the surgeon by the hospital. In present case on appeal, the surgeon would distinguish *Aderhold, supra,* for there the hospital was owned and operated by the operating surgeons. The rationale of the case is bottomed on application of the general principles of a loaned servant and not upon the ownership of the hospital. Also, see *Hull v. Enid General Hospital Foundation,* 194 Okl. 446, 152 P.2d 693 (1944). In *Hull, supra,* x-ray technicians employed by the hospital, but controlled by the doctor as to treatments, were determined to be loaned servants even though the hospital received part of the fee for the treatment. We do not distinguish present case and find no error in instructing on the loaned servant doctrine.

■ The trial court instructed as to the general principles of master and servant by

Instruction No. 15, as to the loaned servant doctrine by Instruction 17, made application of that doctrine in Instruction No. 6, and allowed under prior circumstances two masters through Instruction No. 18. We find no reversible error with these instructions.

This court has considered the jury instructions as a whole and in light of evidence on which they operated, and find them to have fairly instructed the jury as to the law applicable to the given instructions. *Ricker v. Ball,* Okl., 412 P.2d 961 (1966); *Gasko v. Gray,* Okl., 507 P.2d 1231 (1972).

Surgeon seeks reversible error based on no expert evidence to establish a proper standard of care physician should have followed in the post-operative treatment. Here, record showed while patient remained in the hospital for post-operative care both the patient and a nurse discovered a lump near the incision. That observation was entered on the patient's hospital record for the doctor's information. Both before and after the patient was discharged from the hospital, she complained of nausea, stomach cramps, and a discharge from the incision. This was all called to the surgeon's attention at bi-weekly visits to his office. No x-rays were taken. The sponge was subsequently discovered on x-ray of the abdominal area by another doctor some two months after the operation. This resulted in an immediate operation and removal of the sponge from the patient.

■ Rule that negligence of physician or surgeon must be established by expert medical testimony is subject to exception that expert testimony is not required where negligence is so grossly apparent that laymen would have no difficulty in recognizing it. *Revels v. Pohle,* 101 Ariz. 208, 418 P.2d 364 (1966).[12] *Revels, supra,* involved the finding and removal of steel suture materi-

---

liable for a doctor's breach of his duty to a patient."

**12.** Opinion at p. 366 states:

"Our opinion in the *Boyce* [*Boyce v. Brown*] case [51 Ariz.] at page 421, 77 P.2d [455] page

457 contains the broad statement that in malpractice suits ' * * * negligence on the part of a physician or surgeon * * * must be established by expert medical testimony * *.' This rule is in accord with the weight of authority generally where the defendant's use of suit-

al in patient's abdomen after a hysterectomy. As stated in *Boxberger v. Martin,* Okl., 552 P.2d 370, 373 (1976), " * * * when a physician's lack of care has been such as to require only common knowledge and experience to understand and judge it, expert medical testimony is not required to establish that care."

Here, with the surgeon having just performed a hysterectomy using an abdominal approach, the discovery and noting of a hard lump near the umbilicus, complaints of the patient after the operation, as already detailed in this opinion, subsequent discovery of the sponge through x-ray and of its removal by another doctor, no use of x-ray post-operatively though a known technique for detecting a sponge remaining internally after an operation, only common knowledge and experience is required to understand and judge any lack of care by the physician. Under these circumstances, expert testimony was not required where negligence is so grossly apparent that laymen would have no difficulty in recognizing it. We do not reverse on this objection.

Reversal is sought by the surgeon based on the trial court not allowing in rebuttal a witness to testify as to the correct procedure relation to the sponge count in other hospitals in the community. The real test is whether the surgeon and the nurse, acting under his authority, exercised ordinary care in keeping track of the sponges and seeing to it that they are all removed before the incision was closed. See *Aderhold v. Stewart,* 172 Okl. 72, 46 P.2d 340 (1935). We particularly find no error in present case for, prior to a weekend recess in the trial, the trial court ruled to allow one rebuttal nurse witness by the surgeon as to the correct procedure in a

sponge count. This limitation was without any objection from the surgeon. Thereafter and on continuation of trial after that weekend recess, the surgeon was allowed to and did place in evidence the testimony of a nurse on this subject. The witness not allowed to testify and complained about in this appeal was a second witness whose testimony touched this same area of medical responsibility. Ruling on request to present rebuttal evidence is discretionary with the trial court and is not reversible error on appeal unless there is a showing of clear abuse. *Caughlin v. Sheets,* 206 Okl. 283, 242 P.2d 724 (1952); *Swyden v. Killiam,* Okl., 531 P.2d 1031 (1975). We find no abuse of discretion by the trial court in his limitation on the rebuttal witness as complained by the surgeon.

The surgeon sought the giving of special interrogatories to the jury. The trial court refused. That refusal was a proper exercise of the trial court's discretion. *Colorado Interstate Gas Company v. Lorenz,* Okl., 330 P.2d 583 (1958); *Sun Oil Co. v. Hoke,* 197 Okl. 261, 169 P.2d 753 (1946). Any suggestion of error on this consideration is without merit.

Affirmed.

All of the Justices concur.

---

able professional skill is a subject calling for expert testimony only, or the question to be determined is strictly within special and technical knowledge of the profession and not within the knowledge of the average layman. But the force of the rule is broken when the act or omission comes within the realm of common knowledge and thus, there is an exception to the rule that is as well settled as the rule itself, and that is expert testimony is not required where ' * * * the negligence is so grossly apparent that a layman would have no difficulty in recognizing it.' "