## PHOENIX INSURANCE CO. et al. v. SCHOOL DIST. No. 132.

No. 14902—Opinion Filed June 17, 1924.

(Syllabus.)

**1. Appeal and Error—Discretionary Rulings—Qualifications of Expert Witnesses.**

Whether or not the qualifications of a witness with respect to knowledge or special experience is sufficiently established is a matter resting largely in the discretion of the trial court, whose determination is usually final, and will not be disturbed by an appellate court except in extreme cases where it is manifest that the trial court has fallen into extreme error or has abused its discretion, and that prejudice to the complaining party has resulted, even though the appellate court might have decided differently if the question had been presented to it in the first instance.

**2. Insurance—Tornado Policy—Proof of Loss—Waiver.**

Where in a suit upon a policy of insurance against loss by windstorms, etc., it is shown that an adjusting agent was sent to investigate a loss and such adjuster made examination of the building. and within the time limited in said policy for making proof of loss denied liability under the policy on the ground that the damage was caused by means other than those specified in the policy, further proof of loss thereunder will be held to have been waived.

Error from District Court, Comanche County; A. S. Wells, Judge.

Action by School District No. 132, Comanche County, against the Phoenix Insurance Company of Hartford, Conn., and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Rittenhouse & Rittenhouse, for plaintiffs in error.

Stevens & Cline, for defendant in error.

GORDON, J. Action by school district No. 132 of Comanche county, Okla., against Phoenix Insurance Company, of Hartford, Conn., a corporation, the Royal Exchange Assurance, a corporation, and National Fire

Insurance Company of Hartford, Conn., a corporation, on certain tornado, cyclone, and windstorm insurance policies, insuring the brick school building of defendant in error against damages from tornado, cyclone, and windstorms.

There were originally actions against each of the three insurance companies, but these actions were consolidated and upon one trial there was a verdict against Phoenix Insurance Company for the sum of $4,000, against the Royal Exchange Assurance for the sum of $4,000, and against National Fire Insurance Company of Hartford, Conn., for $3,980. Judgment was entered upon these verdicts; motions for new trial and for judgment non obstante were duly filed and overruled, and defendants appeal. For convenience, the parties will be designated as in the trial court.

Defendants have made 44 assignments of error, but have reduced these assignments in their brief, and have argued only the 4th, 5th, 6th, 14th, and 15th assignments. The 4th, 5th, and 6th assignments are identical, except that they apply separately to the three defendants. The 4th assignment is as follows:

"Fourth. The court erred in overruling motion for new trial filed by the Phoenix Insurance Company of Hartford, Connecticut, to which ruling said company objected, its objections were overruled and exceptions allowed."

The 14th assignment of error is as follows:

"Fourteenth. The court erred in overruling the demurrers entered by the defendants and each of them to the evidence of the plaintiff; the demurrers being based upon the grounds that sufficient facts were not proven by the plaintiff to sustain a recovery against the defendants or any of them and in favor of the plaintiff; each demurrer was overruled by the court; each defendant objected to the ruling of the court, and exceptions were by the court allowed to each defendant on the rulings of the court."

The 15th assignment of error is as follows:

"Fifteenth. The court erred in overruling the motion made by each of the defendants for an instructed verdict in favor of the defendants and each of them, to which ruling of the court the defendants and each of them objected, and thereupon the court allowed to each defendant exceptions to the ruling."

In their brief, defendants argue these propositions together, and under the assignments above set out they take the position, first, that at the close of plaintiff's testimony, there was not sufficient competent evidence to justify a recovery against the defendants; second, that at the close of all the evidence on the part of the plaintiff and defendants, there was not sufficient evidence to justify a recovery against the defendants, and that the court should have directed a verdict in favor of the defendants; and, third, that after the verdict of the jury and the judgment of the court thereon, the motion for new trial should have been granted because of the fact that there was not sufficient competent evidence to justify the verdict of the jury or a judgment thereon.

In the petition plaintiff sets out the policy sued on; the description of the school building; that on or about the 18th day of August, 1922, said school building was by windstorm, or cyclone, so damaged, wrecked, and destroyed as to render said building wholly unsafe and unfit for use; that the reasonable value of said building at the time of such loss was the sum of $25,000, which was a total loss to the plaintiff, except that the salvage from said building was of the value of $2,500. Plaintiff further pleads waiver of proof of loss in that the defendant companies through their duly authorized agents personally appeared at the site of said building within 60 days from the date of such loss and made full and complete investigation of the cause, nature, and extent of the damage, and thereupon denied to plaintiff any and all liability under the policies of insurance herein sued on.

Defendants answered with a general denial, but admitted the execution of the policies. They denied that the loss and damage to the building was caused by a tornado, windstorm, or a cyclone, but allege that such loss was occasioned by reason of imperfect construction, age, and natural depreciation, and by reason of great cracks running under said building, and the settling of the foundation and the cracking of the walls resulting therefrom. Defendants further plead in much detail that they were discharged from liability under the policies by reason of the failure of the plaintiff to make proof of loss as provided in said policies.

To this answer, reply was filed, making the issues. The evidence on the part of the plaintiff discloses that on or about the 18th day of August, 1922, at an hour late in the afternoon, a windstorm passed through and over the place where the school building was located on the outskirts of the town of Chattanooga, in Comanche county, Okla.

N. M. Nunn, in testifying, describes clouds

coming from different directions; that the clouds met and changed and whirled toward where he lived and the schoolhouse; that every object began to twist and whirl, and it blew the tops out of small trees and blew the limbs 50 yards north of the schoolhouse and back and left them between the schoolhouse and his house. That it ripped the top off his Ford car and blew it around the house; that he heard the schoolhouse windows, everything slamming on the schoolhouse; that his house was about 125 yards from the schoolhouse. Record, pages 83 to 86.

John Murphy lived two blocks southwest of the school. He testified that the storm occurred on the 18th day of August about seven p. m.; that it raised his house and broke a window in his bed room. Record, page 94.

D. C. Welch testified that he went to Chattanooga on the Sunday after the storm; that the storm had moved a building belonging to him; that it was a wooden building, 20 feet wide by 60 feet long, with an iron roof, having in it about 10,000 pounds of machinery and 300 or 400 bushels of cotton seed; that the building was moved 60 or 70 feet from its foundation by the storm.

Shortly after this storm, different parties went to the schoolhouse, either on their own initiative or under employment of the school board, to examine as to the damage caused by the storm. There is a general agreement among all the witnesses that examinations made beginning two or three days after the storm and lasting for a number of weeks disclosed that the building was in a dangerous condition and liable to fall. Props were placed against the walls to hold them temporarily. It was concluded that the building was unsafe for occupancy and it was abandoned and torn down. The chief controversy arose over the question whether the unsafe condition of the building was caused by the storm or by a settling of the foundation of the building. Soon after the storm several building contractors of long experience in the construction and dismantling of buildings, men who claimed to be familiar with the causes whereby such building would crack and become unsafe, were employed by both sides to this controversy to examine the building in question. After detailing the condition in which they found the building they were asked their judgment, as experts, as to the cause of its condition. Some of them testified that the condition was evidently brought about by a heavy wind, stating further that it must have been caused by an earthquake, explosion, or wind, others,

testifying for the defendants, said that the cracks and the leaning walls and displacement of portions of the walls were caused by the settlement of the foundation. The proof further shows that during the month of September, 1922, adjusters for the defendant companies came upon the ground, examined the building, talked with the school board and advised the school board that the damage was caused by the settlement of the foundation of the building and not by wind, and that there was no liability under the policies. Notice of loss was given to the local agent of the defendants within a short time after the storm, and the local agent, with the adjuster, made the examination.

Strenuous contention is made by the defendants that by reason of the fact that none of the windows in the school building were broken, that no shingles were shown to have been torn from the roof, it was a physical impossibility that winds could have caused the damage. There was evidence that prior to the storm and in the year 1918, a crack was discovered in this building by a plumber who came there to do certain repair work. There is evidence that the plumber talked with a member of the school board concerning the placing of rods through the walls to strengthen them; there is evidence that plastering had fallen from the ceiling of the building, but there is also evidence that the conditions were greatly changed immediately after the storm, that a large amount of plastering had fallen, that portions of the walls bulged to an extent of two or three inches. In the course of the trial the principal question to which the testimony of plaintiff and defendants was directed was whether the building was so injured by the windstorm or cyclone, or whether the injuries were occasioned by a gradual settling of the foundation causing cracks in the walls to appear, thus rendering the building unsafe. Upon this question plaintiff introduced several persons engaged in the building and contracting business and one or two persons having qualifications as engineers and claiming to be familiar with the construction of such buildings, the effect of earth and wind disturbances thereon, and the effect of the settlement of foundations thereunder. Defendants introduced witnesses of like character to testify as to the effect of settlements by foundations under buildings, and these witnesses both for plaintiff and defendants, having made examinations of the building, testified as to the condition which they found, and testified as to their opinions touching the cause of such conditions. The witnesses for the plaintiff, on the one hand, gave evi-

dence that the foundation was in good condition; that the settlement of the foundation could not cause the serious damage to the upper portion of the building which they found. The witnesses for the defendants, on the other hand, testified that the foundation had settled appreciably; that it was cracked, and that these improper conditions would cause a general subsidence and disorder throughout the whole building.

The first proposition advanced by defendants is that the evidence of these witnesses on the part of plaintiff is mere conjecture and should not have been admitted by the court. The admission of such testimony of experts or skilled witnesses is a matter resting largely in the discretion of the court, and this discretion, when exercised by the trial court, will not be disturbed by the appellate court unless manifest injustice has been done. 22 C. J. page 526, section (b), "Discretion of Court," is as follows:

"Whether or not the qualification of a witness with respect to knowledge or special experience is sufficiently established is a matter resting largely in the discretion of the trial court, whose determination is usually final, and will not be disturbed by an appellate court except in extreme cases where it is manifest that the trial court has fallen into extreme error or has abused its discretion, and that prejudice to the complaining party has resulted, even though the appellate court might have decided differently if the question had been presented to it in the first instance."

See, also, Remsberg et us. v. Iola Portland Cement Company (Kan.) 84 Pac. 548.

It is argued that the testimony to the effect that the injury to this building was caused by a cyclone or windstorm is beyond the bounds of possibility because of the fact no windows were broken, no shingles were torn from the roof, and the guttering, loosely attached, was not torn off. On the other hand, the record discloses that a short distance from this building tops of small trees were torn out, carried beyond the building and brought back again to the same side of the building from which they started; that a considerable building, 20 by 60 feet in dimensions, near the school building was moved 60 feet from its foundation; that the building had an iron roof and a large amount of machinery and cotton seed within it; and, further, that the upper part of the school building in question appeared to be twisted wholly out of line, bulged and wrenched. We are no more able than was the writer of defendants' brief to explain the vagaries of a cyclone, nor do we claim to be versed in the lore

of such phenomena, but we are convinced that there was a sudden damaging change in the building about the time of this storm. The testimony of the witnesses for plaintiff is not mere conjecture as claimed in defendants' brief, but is a conclusion reached from a careful examination of the building and the force exerted upon it, and the jury had before it this testimony of these experts who had examined the building, and it had before it also the uncontroverted fact that the storm occurred. Defendants on their part introduced testimony of experts, deduced from an examination of the building after the storm, that the damage was caused, not by the storm, but by a sinking of the foundation. If it were not conjectured by these experts that the sinking of the foundation caused the damage, no more was it conjecture on the part of the experts introduced by plaintiff to conclude that the sinking of the foundation could not have caused the conditions found.

Much stress is laid by defendants upon the testimony as to the condition of the building prior to the storm. It is claimed that the testimony of the plaintiff in regard to these conditions is wholly negative. To this we cannot agree. A number of plaintiff's witnesses were interrogated regarding cracks in the building and in the walls. These witnesses testified that they saw no cracks of any importance. A man using a room, or going through it regularly day after day or from time to time, is not giving wholly negative testimony when he says there were no cracks because he did not see them. If cracks of importance existed in ordinary walls a man passing in and about the room would see them, and we think the testimony of such a witness is vastly different from one whose attention would not be called to the existence of such a thing, and who would have no opportunity to discover the same. We therefore feel that upon the proposition of the case as to whether the building was rendered uninhabitable by reason of the storm, or whether by reason of imperfect construction and a sinking of the foundation, the verdict of the jury is reasonably sustained by competent evidence.

2. We pass to the second question raised, which is the failure of the plaintiff to make its proof of loss in accordance with the terms in the policies, or make proper proof of waiver. Waiver is pleaded in this case by the plaintiff, and the proof is substantially that notice of the loss was given within a short time after the storm to the local agent of the defendants; that within 60 days from the occurrence of the storm the adjusters

appeared and made an examination of the building; that when they had completed this investigation something was said by some one of the school board regarding the giving of a check for the amount of the loss. W. E. Brogan, a member of the school board, testified as follows:

"By the Court: Relate the conversation. A. Well, we were talking and Cline and Lilly were present and we told them we would like to begin tearing the building down as soon as possible, and Mr. Lilly spoke up and said it didn't make any difference to them, they had no interest in it, they didn't think they had any loss. Q. Did he have any other conversation of like import there that day or any other day? A. They was there at a later date and Mr. Lilly, I believe, did most of the talking; they were both present and they claimed they didn't figure they had any loss. Q. Why? A. He said it wasn't wind damage, but was done by foundation settlement."

In the testimony of O. M. Murray, pages 78-81, Record, we find further:

"We went over the building, part of the time together and part of the time in one's and two's. I was with Mr. Lilly most of the time * * * and when we wound up after going through the building we were all out on the southwest side of the building. Mr. Lilly said, 'You have no claim against us.' Mr. Lilly was the one doing the talking at that place."

It is so clear that the conversation by these adjusters amounted to a waiver of proof of loss that we need do nothing further than cite the authorities upon the proposition. Springfield Fire & Marine Insurance Company v. Booher, 102 Okla. 89, 226 Pac. 1028; State Mutual Insurance Company v. Green, 62 Okla. 214, 166 Pac. 105; Continental Life Insurance Company v. Wagester, 38 Okla. 291, 132 Pac. 1071; Hartford Fire Insurance Company v. Sullivan et al., 74 Okla. 241, 179 Pac. 24; Springfield Fire & Marine Insurance Company v. Donahoe, 87 Okla. 78, 209 Pac. 442.

This examination was made and this conversation had with the adjusters early in the month of September, 1922, and clearly within the 60 day period after the storm in question. We therefore are of opinion that the waiver was properly sustained by the proof.

Argument is made by the defendants in which it is attempted to be shown that the loss occurred prior to the date above mentioned. It is claimed that while it was shown that there was some wind on the 18th day of August, it was not sufficient to blow out any windows, and therefore could not be presumed to break a 13 inch wall; that therefore it must have been that the storm occurred during the spring, when there were some window lights broken out of the school building, and for which payment was made by one of the defendant companies. In our judgment the testimony too strongly supports the theory that the storm occurred on the 16th day of August to allow us to indulge the presumption suggested by defendants' brief.

3. The third question argued by defendants touches the sufficiency of plaintiff's evidence as to the value of the school building involved here. The evidence on this branch of the case is meager and is not calculated to give to this court full assurance that the value of the building was thoroughly established. It would seem that a building of such prominence, in such a community, must have been well known to many inhabitants who were competent to give evidence as to its value. The fixing of this value is done by one witness only. W. E. Brogan, a banker living in the town and a former member of the school board, was questioned as to this value, but upon objection being made to his qualifications, he was not permitted to testify. We see no reason under the circumstances why this witness, because of his acquaintance with the building, should not have been qualified by proper question, but this matter is not before us. The sole witness upon the question of value is G. S. Glenn. This witness was a building contractor with about 20 years' experience, engaged in the erecting of various kinds of buildings, including brick and stone buildings, and in the erection of public buildings as well. He had been both architect and builder. (Record, 160-163.) He had made an examination of this building during the fall of the year 1922, and some little time after the storm of August 18th. He had been through the basement and the first and second floors making his examination in an effort to determine the cause of the damage to the building. He says he is able from his observations to give the value of the building in a general way. Prior to the storm on August 18th, he had seen the building at a distance as he would pass through the town. He estimated the building worth around $20,000, and the salvage worth somewhere around $3,000. His estimate of the value of the building before the storm was fixed as of August 15th. Defendants did not see fit to introduce any evidence as to value. This testimony must be considered from two angles: First, upon the defendants' demurrer to plaintiff's evidence and their motion for

new trial on the ground of lack of sufficient evidence. Upon this first proposition we have little doubt. Guided by the well-settled rules of this court that upon such demurrer to the evidence or motion for an instructed verdict "every fact which the testimony expressly or by reasonable inference tends to prove" is admitted, and, further, that "the evidence is sufficient to sustain a judgment if there is any evidence whatever reasonably tending to prove either directly or immediately, or by permissible inference, the essential facts," we are not justified in disturbing the judgment. Midland Valley R. Co. v. Larson, 41 Okla. 360, 138 Pac. 173; Hughes v. Senter, 88 Okla. 191, 212 Pac. 311; Anthony v. Bliss, 39 Okla. 237, 134 Pac. 1122; M., O. & G. Ry. Co. v. Smith, 55 Okla. 12, 155 Pac. 233.

Second, it is contended by defendants that this evidence is inadmissible by reason of the fact that the witness had made no examination of the building prior to the storm of August 18th. It is said that such testimony must be based on actual knowledge of the condition of the building at the time to which the evidence relates; that there is evidence by a plumber that in the year 1918 a crack existed in the walls of the building and that its existence could not have been taken into consideration by the witness on account of his lack of knowledge thereof. As we have said heretofore, the admission of such opinion evidence is largely with the discretion of the trial court, and the ruling of such court will not be disturbed here unless manifest injustice has been done. In Springfield Fire & Marine Insurance Co. v. Griffin, 64 Okla. 131, 166 Pac. 431, this court on page 136 of the opinion holds that in order to reverse upon this ground, abuse of discretion must be shown. See, also, A., T. & S. F. Ry. Co. v. Baker, 37 Okla. 48, 130 Pac. 577; Chateaugay Ore & Iron Co. v. Blake, 144 U. S. 476.

In the case of Fire Association of Philadelphia v. Farmers' Gin Company, 39 Okla. 162, 134 Pac. 443, the question was similar to the one here. On pages 165-166 of the opinion this court said:

"We have no doubt but that the correct rule in determining the value of live stock and other personal property, where values are unstable and fluctuate daily, a witness must show that he is familiar with the current price in the market where the property is offered for sale, and this is the rule enunciated by the authorities cited, but with the class of property, covered by the insurance policy, in the case at bar the rule is, and should be, different. In this case the cotton gin, both building and machinery, partakes of the nature of real estate, and these witnesses were familiar with the same, and are therefore competent to testify; the value of their testimony is, of course, at all times a question for the jury, but its competency is for the trial court, and while the court, in the exercise of a sound judicial discretion, might have rejected it without error, yet, having admitted it, we shall not hold that there was an abuse of discretion in so doing."

On page 166 of the opinion, we find the following:

"Values of property, such as that involved in this case, are not always easy to prove; it may be and frequently is, in the locality where it is situated, of no 'market' value, and yet have in fact a true cash value. If it had no such thing as a 'market value' as that term is ordinarily used and accepted, and especially as used in the cases cited by defendant in its brief, it would follow that proof of value, such as demanded by the test insisted on, would be little short of impossible. To be sure, the plaintiff was bound to furnish the best class of proof of which the case was susceptible; but how are we to say, in the absence of a showing to the contrary, that this rule was not followed?"

Continuing, the opinion reads:

"In 2 Lewis, Eminent Domain (3d Ed.) sec. 656, it is said: 'This is a question the determination of which is left mostly to the trial judge. * * * It is not necessary that the witnesses should have been engaged in the real estate business. Intelligent men who have resided a long time in the place, and who are acquainted with the land in question, and say they know its value, are competent, although they are merchants or farmers, and have never bought or sold land in the place. * * * The value of such opinions depends upon the intelligence of the witness and the knowledge and experience which he possesses in such matters, and is in all cases a question for the jury.'

"While in Jones v. Erie & W. V. R. Co., 151 Pa. 30, 25 Atl. 134, 17 L. R. A. 758, 31 Am. St. Rep. 722, it is said: 'The value of a house or a piece of ground is a subject upon which all persons familiar with the property who have formed an opinion are competent to speak. The value of their opinions will depend on the extent of their familiarity with the surrounding property and the prices paid for it; but this is for the jury to determine.'

"In Cooley's brief on Insurance, vol. 4, p. 3081, is found the following rule, which we think applicable to this case; i. e., 'if the property destroyed is a building, the measure of damages is not the market value of the building at the time of the loss, not what some one would have paid for the building, but the actual value of the property at the time of the loss.'"

See, also, The Law of Insurance, Joyce (2d. Ed.) vol 5, p. 6166.

After careful examination of this question, we are of opinion that the testimony in question was sufficient to go to the jury and was of such weight that we would not be justified under the rule in overturning the verdict of the jury or the judgment of the court thereon. Holding this view, it follows more strongly that the evidence is good against the demurrer to the evidence and the motion for a directed verdict. We have not failed to consider seriously the suggested proposition that the testimony as to the crack in the building which was unknown to the witnesses should have had greater weight with the trial court in determining the admissibility of this evidence, but we have considered, also, that this matter was before the trial court in making up its determination and that the testimony of the plumber was before the court and the jury. We have considered, further, that many months after this crack was said to have been discovered by the plumber, new insurance was issued by these defendants upon said building to the amount of $12,000.

We therefore conclude that the trial court did not err in overruling defendants' demurrer to the evidence, nor their motion for a directed verdict, nor their motion for a new trial, and that there was no error in the admission of the testimony as complained of by the defendants. Holding as we do that the testimony was sufficient to sustain the verdict of the jury, we are of opinion that the judgment of the trial court should be affirmed, and it is so ordered.

JOHNSON, C. J., and NICHOLSON, BRANSON, HARRISON, LYDICK, and WARREN, JJ., concur.