CAUGHLIN et al. v. SHEETS et al.

No. 34484.   March 11, 1952.

Rehearing Denied April 8, 1952.

242 P. 2d 724.

Elmer S. Rutherford, Tonkawa, and Peyton E. Brown, Blackwell, for plaintiffs in error.

I. D. Ross and David Ross, Newkirk, for defendants in error.

PER CURIAM. The parties will be referred to as they appeared in the trial court. The case was tried before the court without a jury.

The plaintiff, W. J. Liles, was the owner of the southwest quarter (SW/4) of section twenty-five (25), township twenty-five (25) north, range One (1) west, Kay county, Oklahoma. The defendant, Thomas G. Sheets, was the owner of the northwest quarter (NW/4) of the same section.

On the defendant Sheets' land there is a ridge or elevation running entirely across said section from north to south and in approximately the center of said section. On the east and west sides of this ridge is lower ground, and that lying east of the ridge is called the east basin, and that west of the ridge is called the west basin. There are two depressions on this ridge, one referred to in the testimony as the north depression and one the south depression. One of the questions in the case is whether these depressions drain water from the east basin to the west basin naturally, or whether the defendant Sheets has caused them to be lowered by artificial means.

At the southwest corner of the Sheets farm is a depression or basin (referred to as the west basin) which at the present time after rains hold several acres of water, and another of the principal questions in the case is whether this basin ever had a natural drainage outlet.

Plaintiff Liles contends that the east basin on defendant's farm had no natural outlet and held some water after rains which escaped only by evaporation and percolation; that the west basin was a natural depression and also held water after rains and had no natural outlet; that in recent years the defendant Sheets had lowered the depressions leading from the east basin to the west basin, thus draining all the water from the east basin into the west basin, and that he then drained the west basin by artifical means into the ditch at the southwest corner of the Sheets farm, and that such water then entered upon the Liles farm, thus ruining several acres of land as to

growing crops. Plaintiff brings this suit to enjoin the defendant from maintaining such drainage system.

Defendant Sheets contends that the east basin has always drained naturally through the two depressions in the ridge toward the west basin, and that he has not lowered the depressions; that the west basin originally had a natural drainage draw or ravine which allowed the water to drain from his west basin onto the Liles farm; that this draw was about 175 feet east of the southwest corner of his farm; that such draw had been filled in or dammed up by the plowing methods employed by Sheets, together with the fence which divides the two farms and which runs across said draw; that the drainage system which he had recently installed merely accomplished the same purpose originally performed by the natural ravine or draw.

Upon the trial of the case, the plaintiff introduced amply testimony to support his contentions; likewise, the defendant introduced ample testimony to support his contentions, and it simply became a question as to which view the trial court would take. The court gave a patient hearing to both sides, and after hearing all the testimony, went out to view the premises as both sides had requested him to do.

This court has long adhered to the rule that where a matter is tried to the court, and there is competent testimony to support its ruling, it will not be disturbed on appeal unless such ruling is against the clear weight of the evidence. We have examined the record and conclude that the decision of the trial court had ample support in the testimony and is not against the clear weight of the evidence.

Plaintiff contends that the trial court committed error in excluding certain evidence which plaintiff offered as rebuttal testimony. Plaintiff offered to prove by certain witnesses in rebuttal that there was no natural drainage from defendant's west basin. Plaintiff's counsel asked the witnesses in substance whether there had ever been a draw or ravine running to the fence from the defendant's farm to the plaintiff's farm. The court excluded this testimony as not being proper rebuttal. It may be noted here that the court did let in a good deal of testimony along this line on rebuttal, but rejected some. The plaintiff plead in the petition that there was no natural drainage from the west basin. In numerical paragraph 7 of the petition plaintiff states, "and a natural ridge along a portion of the south boundary" (referring to the south boundary of the west basin) and again in numerical paragraph 8 plaintiff states, "which said waters (referring to the water in the west basin) have no natural course."

The defendant then stated in the answer that there was a natural drainage from the west basin across plaintiff's land and set out specifically in the answer where it was located. In the third paragraph of the answer is the following, "that the lowest place or natural drain through which the last of the waters naturally drained southward off defendant's farm onto the Liles farm is located about one hundred fifty feet east of the southwest corner of defendant's farm." Upon the trial of the case the plaintiff offered proof by several witnesses that there was no natural drainage from the west basin and that the south boundary of such basin was a natural one. The defendant then offered proof that there was a natural drainage at one time, and the defendant's witnesses fixed the location of such natural drainage at approximately the place set forth in defendant's answer. We further mention that the defendant in the cross-petition states as follows, "that if this honorable court should enjoin this defendant as requested by the plaintiffs, then, and in that event, the plaintiff, W. J. Liles, should be enjoined and restrained from building or maintaining an embankment across the natural water course as set out in said answer or in any way interfering therewith."

It was an essential part of the plaintiff's petition and proof that he allege and establish that there was no natural drainage from the west basin. He did put on a good deal of proof along this line. If he had failed to do so, it would have been incumbent upon the court to sustain a demurrer to the evidence. The rule is that all evidence tending to prove the issues set forth in the plaintiff's petition should be introduced in the plaintiff's direct case. We are aware of the fact that it is sometimes hard to determine the exact dividing line between direct and rebuttal evidence and for this reason the trial court is allowed a reasonable discretion. We have examined the record carefully, and we do not believe the trial court committed error in excluding the testimony offered in rebuttal. This is especially true in view of the fact that the trial court is allowed a reasonable discretion.

The plaintiff also contends that even if there was at one time a natural ravine or draw which drained the defendant's west basin, and if the same had been filled in or dammed up, it was done by ordinary farming methods and was, therefore, proper. We cannot agree with this view. Defendant cites the case of Horton v. Sullivan, 97 Mich. 282, 56 N. W. 552, wherein the court in the second syllabus held:

"Defendant can, in the interest of good husbandry, fill in the cuts, washes, and holes in his premises, though in so doing he obstruct the flow of the water from plaintiff's land."

We have no dispute with this rule of law, but think it has no application here. There was evidence introduced by the defendant to the effect that the plaintiff had plowed or caused to be plowed a headland or terrace on his land south of the fence to such an extent as to fill up the ravine. This, of course, could not be allowed under the circumstances in this case. We think all the Michigan court intended to hold in the above-cited case was that a person can, in the interest of good husbandry, take care of his land by filling in cuts, holes, and washes to a reasonable degree even though it might obstruct the flow of water from plaintiff's land, but this could surely not mean to the extent of filling in a natural ravine or draw eighteen or twenty inches deep and eight or ten feet wide, which draw drains several acres of the plaintiff's land.

The plaintiff has cited and relied upon the case of Alice Davis v. R. D. Fry, 14 Okla. 340, 78 P. 180. That case is as follows: The plaintiff was the lower proprietor and the defendant owned the upper estate, an adjoining farm,

". . . upon which is a natural depression which receives and holds during the rainy season, surface water which collects there from the natural drainage of quite a large scope of adjacent territory, and from which there is no natural outlet, and beyond which there is no ravine or surface indication of a natural water course, when such depression is full to overflowing.

"The depression contains 15 to 20 acres of ground flooded in times of heavy rainfall. The plaintiff in error caused a ditch to be dug so as to drain this depression, and discharge the water therefrom over and onto defendant's crop, on the adjoining premises, destroying the same.

"The right of such drainage by the plaintiff in error is the point in issue."

The court then held as follows:

"When surface waters by natural drainage collect in a natural basin or depression upon the premises of a dominant tenement, and escape therefrom only by percolation or evaporation, forming thereby a lake or pond, permanent in its character, the waters so collected and coming to rest lose the character of surface water, and may not by artificial means, other than that incident to the cultivation of the soil, be drained to the damage of a servient tenement, without liability in damages for such act."

This is undoubtedly the law, but in view of the trial court's finding that there was a natural drainage from the

defendant's farm, such case has no application here. The action of the trial court is in all respects affirmed.

This court acknowledges the services of Attorneys Mart Brown, Merton Bulla, and John F. Butler, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V. C. J., and WELCH, GIBSON, DAVISON, JOHNSON, O'-NEAL, and BINGAMAN, JJ., concur.