**Don CALES, Plaintiff in Error,**

v.

**Corbett B. RUSHING et al., Defendants in Error.**

**No. 37160.**

Supreme Court of Oklahoma.

Jan. 28, 1958.

Young, Young & Young, by Glenn O. Young, Sapulpa, for plaintiff in error.

Goode, Goode & Henson, Shawnee, for defendants in error.

DAVISON, Justice.

This action was brought by the plaintiff in error to recover damages from the defendants in error. The parties occupy the same relative position here as in the trial court and, hereinafter, will be referred to by their trial court designation.

The material allegations of the petition aver that plaintiff was a student at Oklahoma Baptist University; that the defendants were members of the faculty or officials of the university; that the defendant Rushing, with the approval of the defendant Tucker, committed an assault and battery upon the plaintiff; that the plaintiff reported this assault to the defendant Raley, President of the University, and defendant Scales, Vice-President of the University; that said defendants falsely accused the plaintiff of being the victim of a mental aberration, stating that he should consult a psychiatrist, that defendant stated he should discontinue his studies at the university; that defendants circulated false rumors about the campus in an effort to discredit plaintiff; that plaintiff was obliged to sever his connections with the university because of the mental and physical pain, anguish and humiliation; that the wrongs were done wantonly and maliciously and in furtherance of a scheme and design; that he suffered actual damage by reason of the acts of defendants.

The amendment to plaintiff's petition states as follows:

"That Oklahoma Baptist University is a body corporate, of which the defendants herein were at all times herein complained of servants and agents acting together and in furtherance of a common design and purpose; that the capacities in which said defendants were employed are as follows: Defendant William R. Tucker was professor of Government; Corbett B. Rushing, Assistant Professor of Government; John W. Raley was President of said University, and James Ralph Scales was Vice President; that the wrongs hereinafter complained of were perpetrated by them, and each of them, under color of and by virtue of their said offices as professors and officers of said Oklahoma Baptist University, and in furtherance of a common scheme, design and plan to either indoctrinate plaintiff in their political and religious philosophy or drive him from the University."

The plaintiff's petition nor amendment thereto, did not ask for any specific amount of damages for any of the individual acts, but in his prayer for damages states that "As a result of said wrongs herein complained of, he sustained actual damages in the sum of $25,000.00 and is entitled to punitive damages in the further sum of $25,000.00."

From the allegations of the petition and amended petition, and from the theory and manner in which the case was tried it is clear that the gravamen of the action was for conspiracy on the part of the defendants to either indoctrinate plaintiff in their political and religious philosophy or drive him from the university.

The record is a plethora of immaterial facts concerning the plaintiff's scholastic history, religious persuasion and personal opinions. The plaintiff's pertinent evidence disclosed that while enrolled at Oklahoma Baptist University in the fall of 1952, the plaintiff decided to seek information from the school authorities concerning the proper procedure for organizing an Eisenhower for President Club. He was referred to an instructor in government, the defendant Rushing, who was supporting Stevenson. Plaintiff went to Rushing's office, which was shared by the defendant Tucker, and asked Rushing for the information he desired. Both defendants were present in the office attending to their respective duties, and neither of them was previously acquainted with the plaintiff, nor he with them. In the course of the plaintiff's interview with Rushing, the two became engaged in a discussion of the relative merits of the presidential candidates and prominent Americans, both past and present, and various political and religious theories. Their discourse soon departed from an academic inquiry and degenerated into a heated exchange of opinions during which the plaintiff's theological assumptions led him into making some rather derogatory accusations concerning the instructor. The ultimate result was that Rushing became angry and assaulted the plaintiff. After this assault, which occurred in the doorway of the office and the hall outside, plaintiff sought an interview with the university president, the defendant Dr. Raley. At this interview the other defendant, Professor Scales, the vice-president of the university, was also present. Plaintiff reported the assault to them, and a general discussion of his version of the facts was held.

After leaving this conference, the plaintiff accidentally met Rushing at the entrance of his office building, whereupon a further heated verbal exchange resulted. Later the same day plaintiff was examined by a physician who related finding bruises and minor abrasions on the plaintiff's face and neck, for which he prescribed a mild sedative to relieve the pain and nervousness. On the following day, plaintiff's brother, also a student at Oklahoma Baptist University, was requested by Dr. Raley and Professor Scales to confer with them about plaintiff. In this discussion the two officials suggested that plaintiff was mentally ill, and that the plaintiff's brother should tell his parents. Sometime thereafter the plaintiff's parents, two of their friends and their attorney visited the university and interviewed each of the defendants to learn the facts of the incident. In their interview of Professor Scales, he recommended that plaintiff should see a psychiatrist. Dr. Raley offered to talk with the parents in private but refused to discuss the matter in the presence of the attorney. Plaintiff withdrew from school, and this action was thereafter instituted.

The defendants demurred to the plaintiff's evidence upon the grounds of insufficiency, misjoinder of causes of action, departure from allegations of the petition, failure to show a common plan or agreement or joint causes of action, and failure to sustain the allegations of the petition. The demurrer was sustained as to all defendants. The plaintiff then requested permission to reopen to offer as additional proof of conspiracy a deposition of Professor Scales. Permission was denied. Thereupon, the plaintiff requested permission to separately docket the action as to Raley and Scales; dismiss as to Tucker; and proceed as to Rushing. This too, was denied, and judgment was entered dismissing the action.

It is readily apparent from the facts that the defendant Tucker's only connection with the assault was the misfortune to be working at his office at the time it occurred. While it appears that he may have voiced his agreement with occasional remarks made by one or the other of the participants in their discussion prior to the assault, there is absolutely no evidence to connect him with the assault in any manner. Plaintiff's testimony affirmatively established that Tucker did not participate in the assault but instead left the vicinity as it

was occurring. There was likewise a total lack of evidence to establish any preconceived agreement between the instructors to injure the plaintiff. The fact was that neither instructor even knew the plaintiff before he entered the room. Tucker was merely an innocent bystander.

■ The two executive officers of the university, Raley and Scales, were enmeshed in this action by virtue of the plaintiff's reporting to them the assault on him. There is no evidence of any agreement between them and Rushing, much less that they knew plaintiff would visit Rushing. Plaintiff did testify that at a previous faculty reception Dr. Raley stated to him that he had received several letters telling him to "ride herd" on the plaintiff, but this testimony is altogether insufficient to prove a conspiracy. After investigating the assault, these two school administrators evidently concluded that the plaintiff needed psychiatric help and that it would be best if he discontinued his studies at Oklahoma Baptist University in view of the facts as they understood them. They did not state their opinion to anyone other than the plaintiff, his brother, and his mother and father who, with their guests and attorney, came seeking information from them in their official capacity as university officials. Their opinion in this respect was nothing more than any university officials should have given the members of plaintiff's family under the circumstances involved. There was no evidence that these defendants attempted to compel the plaintiff to leave school; instead it appears he left voluntarily. The allegation that rumors were circulated by defendants was unsupported by any evidence. Precisely put, there was absolutely no evidence of a conspiracy to injure plaintiff.

■ Since no cause of action was established against Dr. Raley, Professor Scales, or Professor Tucker, the demurrer as to these defendants was properly sustained. Nissen v. Andres, 178 Okl. 469, 63 P.2d 47; Schuessler v. Northeast Development Co., Okl., 264 P.2d 737.

The plaintiff next contends that the court erred in sustaining the demurrer as to the defendant, Rushing, for the assault. It is the contention of the defendant that the court was correct in sustaining the demurrer as to Rushing on the theory that the plaintiff having failed in his proof of a conspiracy his cause of action was demurrable by all defendants.

In support of his contention on the above proposition plaintiff cites, Teeters v. Frost, 145 Okl. 273, 292 P. 356, 71 A.L.R. 179; Colby v. McClendon, 85 Okl. 293, 206 P. 207, 30 A.L.R. 196; Chuck's Bar v. Wallace, 198 Okl. 152, 176 P.2d 484; Perrine v. Hanacik, 40 Okl. 359, 138 P. 148, 51 L.R.A., N.S., 718 and other cases pertaining to the same point of law.

We find no fault with the decisions of any of the above cited cases, but think they are not in point for a decision of the present case. The cited cases deal mainly with situations involving joint liability against persons for some sort of an assault, such as the liability of an employer for the liability of an employee for committing an assault in employer's place of business.

Had the action in the present case been one where the gravamen of the action was for assault and battery and all defendants were alleged to have taken some part in the alleged assault and battery we would have a different situation. The general rule in such a case would be that even though the conspiracy failed, any one of the individual defendants could have been charged with damages suffered.

■ The gravamen of the action in the present case was for damages on account of the alleged conspiracy on the part of the defendants, "in the furtherance of a common scheme, design and plan to either indoctrinate plaintiff in their political and religious philosophy or drive him from the university."

The plaintiff's petition did not ask for any specific amount for damages for any of the alleged individual wrongful acts, but asked judgment against the defendants for all of the wrongs complained of.

■ The liability of the defendants was dependent, by reason of the manner in which the wrongful conduct of the defendants was alleged, was solely upon the theory of conspiracy. The alleged assault and battery was only a small strand in the rope of the conspiracy charge. No one individual could be separately charged with the responsibility for the damages claimed upon the grounds urged in the petition. Under the pleadings in the present case, the failure to prove a conspiracy was tantamount to a failure of the action as to all defendants.

The facts and pleadings in the present case coupled with the manner and theory upon which the instant case was tried, makes the exception to the general rule applicable herein. The exception to the general rule involves situations in which reliance is placed upon acts of several defendants, no one of whom, standing alone, would be liable, and from which the harmful effects complained of could result only through collective action. In such cases proof of conspiracy must be made, in order to support the action at all. 152 A.L.R. 1148 and 152 A.L.R. 1154.

The case of Landau v. Hostetter, 266 Pa. 7, 109 A. 478, 479, is so closely in point that we think it of value to cite the entire opinion, as follows:

"The grievance of which plaintiffs complained in the statement of their cause of action was a conspiracy entered into by the three defendants to evict them from leased premises. There were nine distinct averments of such conspiracy and of what was done by the defendants in pursuance of it. The case was tried on the theory that the damages claimed by the plaintiffs resulted from the conspiracy. They made it the ground of their action, and the learned trial judge did not therefore err in instructing the jury that they could not find a verdict against but one of the defendants. In Laverty v. Vanarsdale et al., 65 Pa. 507, relied upon by appellants as an authority that the trial judge did err, the 'damage sustained by the plaintiff' was 'the ground of action, not the conspiracy.' 'Under the facts of that case combination of conspiracy was nothing.' Collins v. Cronin, 117 Pa. 35, 11 A. 869. Here the conspiracy was the gravamen of plaintiff's complaint. In view of the pleadings and the theory upon which the case was tried, the assignments of error are without merit. Judgment affirmed."

The judgment of the trial court in sustaining the demurrer as to all of the defendants was correct and we so hold.

■ Plaintiff also argues that the trial court erred in refusing plaintiff permission to reopen the case and to introduce Professor Scales' deposition after resting his case and after the demurrers had been sustained. This testimony had been available at all times and, in any event, the Professor was present and did testify. This request was left largely to the discretion of the trial court and the ruling thereon will not be disturbed unless it clearly appears that the trial court abused its discretion. White v. City National Bank of Norman, Okl., 271 P.2d 713. There was no abuse of discretion in the court's refusal to allow plaintiff to reopen his case for the introduction of this deposition.

■ Under the entire record in this case we find that the trial court, after the demurrers were sustained, did not err in denying plaintiffs requested permission to separately docket the actions as to the defendants, Raley and Scales; dismiss as to the defendant Tucker, and proceed as to the defendant Rushing. No abuse of discretion on this point is found. Luke v. Patterson, 196 Okl. 522, 164 P.2d 394.

The judgment is affirmed.

WELCH, C. J., CORN, V. C. J., and WILLIAMS, JACKSON and CARLILE, JJ., concur.

JOHNSON and BLACKBIRD, JJ., dissent as to Rushing and otherwise concur.