**Gertrude BAKER, Plaintiff in Error,**
**v.**
**W. V. BAKER, Defendant in Error.**
**No. 40165.**

Supreme Court of Oklahoma.

Nov. 5, 1963.

Spillers, Spillers & Givens, Tulsa, for plaintiff in error.

John W. Tillman, Fred A. Tillman, Don Hampton, Pawhuska, for defendant in error.

WILLIAMS, Justice.

The question to be determined in this appeal is whether to affirm the trial court's refusal to permit the plaintiff to reopen the case after conclusion of taking of testimony and to testify as to certain of defendant's physical (manly) characteristics. Reference to the parties is made here as in the trial court.

The facts as developed at the trial were that in the summer of 1952, plaintiff and defendant commenced living together at the

defendant's ranch in Osage County, Oklahoma; that, while plaintiff and defendant were residing in Utah, plaintiff, on November 7, 1953, gave birth to a son; that defendant paid the medical bills; that soon thereafter defendant returned to Oklahoma and married Miss P; that in April, 1954, predicated upon an alleged common-law marriage, plaintiff brought a divorce action against defendant in Utah; that on June 4, 1954, plaintiff and defendant in the office of plaintiff's attorney in Colorado executed a "Settlement Agreement"; that service of summons upon defendant was not obtained in that action for divorce; that in 1956 an action for divorce was filed in Tulsa County; that while such action was pending it was learned that the man whom plaintiff had married in 1933 was alive and not divorced from her; that on February 20, 1957, the District Court of Tulsa County found that no valid marriage existed between plaintiff and defendant.

On February 21, 1958, plaintiff instituted this action for breach of the "Settlement Agreement". She alleged that defendant had made a payment of $1500.00 on the amount of $15,000.00 allegedly due pursuant to the terms of such agreement.

Defendant's answer contained a general denial; denied payment of the $1500.00, and asserted that if such payment was made it was in settlement of the Utah divorce action.

Defendant further asserted that the agreement was made in contemplation and settlement of an intended separation and divorce between the parties but that plaintiff was married to another, Boring, and, therefore, the agreement was fraudulent; and that plaintiff had failed to abide by the terms of the agreement and has harassed him with numerous law suits.

In her amended reply plaintiff alleged that she had believed Boring to be dead; that as a result of her alleged common-law marriage to defendant they had a child; that the principal consideration for the execution of the settlement agreement was to provide means to support and educate such child and discharge the defendant's moral and/or legal obligation with respect to him.

For reversal of the jury's verdict for the defendant and judgment based thereon, plaintiff advances only one proposition. It is as follows:

"The trial court erred in refusing to permit the plaintiff to rebut the testimony of the defendant's witness, Dr. Earl E. Stock, by testifying that the physical characteristics of the defendant's testicles were perfectly normal."

Near the end of a two-day trial, defendant produced Dr. S. who testified that on June 16, 1943, he examined the defendant; that the defendant gave a case history of having had the mumps; that it had "gone down"; that certain microscopic tests, description of which was given by the witness but need not be detailed herein, were made; that the witness concluded that defendant was then sterile; that two further such tests of same result were made shortly thereafter; that further tests were made on September 5, 1961; that the finding was "still the same"; that the doctor was of the positive opinion defendant could not "father a child".

After the taking of testimony was concluded, plaintiff requested the trial court to order defendant to submit to a physical examination on the ground "this doctor's testimony was a little bit unexpected." The request was denied.

Plaintiff now states that "The case at bar was tried prior to this Court's decision in Witte v. Fullerton and consequently we feel that the instant case will not be reversed because the trial court followed the old view and denied the plaintiff's demand for a physical examination of the defendant". See Witte v. Fullerton, Okl., 376 P.2d 244. She does infer that the alleged inequity resulting from the following of the old rule by the trial court could be offset in part by reversal of the judgment of that court as herein sought.

Plaintiff's attorney stated in the record that, throughout the trial, until the calling of the doctor as a witness, defendant in his testimony had given no intimation that he had had the mumps or that anything was wrong with him and that no hint of it was pleaded and that plaintiff "had no opportunity to meet it with competent medical proof". The court treated this as an offer and sustained objection to it.

In this connection we note that defendant on the morning of the second day of the trial below, testified that in 1939 or 1940 he had had a test made by a Dr. H. as to whether he could become a father, and soon afterward he and his (then, third) wife adopted a child; that plaintiff then moved to strike on the ground that testimony of the effect sought to be inferred could be given only by an expert; that such motion was overruled and no further objection to that testimony was made.

█ It may be that plaintiff was surprised by the appearance and testimony of Dr. S. However, we fail to find anything in it to be palpably improbable. Nor have we found the lodging of any objection to the giving by the Doctor of his testimony on the ground of failure to plead the matters covered by him. Therefore by Statute, 12 O.S.1961 § 317, the pleadings may be considered as having been amended to conform to the proof. See Woolfolk v. Semrod et al., Okl., 351 P.2d 742.

Thereafter plaintiff requested permission to reopen the trial in order to give her testimony concerning defendant's physical condition. This was denied. She then made an offer of proof, as follows, to-wit:

"Now plaintiff tenders if she be permitted to re-open in the manner described, that she would testify that the testicles of Mr. Baker are perfectly normal and don't exhibit the soggy, mushy, or other shapeless characteristics described by the medical witness presented by the defendant."

An objection to such offer was sustained.

Plaintiff contends that "the evidence shows that the plaintiff had been married to four other men prior to entering into her relationship with the defendant. We believe that she was qualified as a layman to testify in accordance with her tender of proof which the court erroneously rejected. We assert that such does not require the testimony of an expert in the technical sense, as her testimony would go only to a physical fact. * * * The offer of proof was that she was familiar with their condition and that they were normal, which would certainly have probative value in refuting the testimony of Dr. Stock."

Plaintiff argues that had the jurors been afforded an opportunity to hear and pass upon plaintiff's testimony of offered effect and believed it rather than that of the Doctor of opposite effect, they would have been justified in disbelieving all of his testimony. The following discussion relates to that argument.

Plaintiff relies on the case of Oklahoma Union Ry. Co. v. Bertrand, 129 Okl. 263, 264 P. 621. We do not consider such case to be in point. There "the injury was objective."

In 32 C.J.S. Evidence § 471, paragraphs g and j, pp. 116 and 117, is the following language:

"g. Whether the testimony is a statement of fact or the expression of an opinion or a conclusion determines the admissibility of testimony of the ordinary witness as to nature or character. * * *

"j. Testimony of an ordinary witness as to physical facts or conditions is admissible where it is a statement of fact, but not where it is the opinion or conclusion of the witness."

It may be true that in the exercise of his discretion as governor of the trial, the judge of the trial court could properly have permitted plaintiff to testify that as a matter of physical fact she had personal knowledge thereof and that defendant's organs in question were firm and sound as opposed to be-

ing mushy, soft or spongy. That, however, is not the exact situation with which we are here confronted.

It may be true, also, as argued, that plaintiff had become a semi-expert on the physical (manly) characteristics of a good, sound husband (or mate) and that she had formed an opinion as to the normalcy of defendant's physique. Whether the trial court considered plaintiff to be an expert witness is not revealed by the record. The denial of her offer of testimony was not necessarily a determination adverse to her qualification as such. The ruling rather went to the propriety of reopening the trial and hearing testimony on an issue not altogether immaterial but one which the trial court may have believed to be of slight probative effect.

In our opinion the trial court did not commit reversible error in the respects urged. Our reaction to plaintiff's argument is three-fold. In the first place, the question of whether or not the defendant was sterile could not be determined from physical characteristics alone. Such question could be finally resolved only by the consideration of the results of laboratory tests conducted by one skilled in medicine. See Mid-Continent Pipe Line Co. v. Price, 203 Okl. 626, 225 P.2d 176.

As already recited herein, Dr. S. examined defendant physically and made certain microscopic tests. These tests indicated that the defendant was sterile.

In discussing the testimony of Dr. S., plaintiff states that it was "highly suspicious; and that the doctor contradicted himself". Assuming, for the sake of discussion, that the doctor so testified, nevertheless, as this Court has frequently said,

"The credibility of a witness and the effect and weight to be given to inconsistent or contradictory oral testimony are questions of fact to be determined by the triers of fact, whether court or jury, and not of law for the court. * * *" See City of Shawnee v. Bryant, Okl., 310 P.2d 754, 760.

We note that the offered testimony in question related only to defendant's apparent physical characteristics, from which normalcy of physical condition could be inferred and from which in turn an inference of procreative ability could possibly be made and which would be required before the testimony would be of effect to directly meet the full probative effect of Dr. S.'s testimony.

In the case of Sunray Oil Corporation v. Burge et al., Okl., 269 P.2d 782, in the first paragraph of the syllabus, we held:

"A verdict by a jury may be based upon reasonable inferences from established facts, but may not be based upon inferences drawn from other inferences."

Since the testimony offered by plaintiff would amount in part to giving an opinion (as to normalcy) and in part to describing physical facts from which inferences could be drawn and from which in turn other inferences would have to be drawn, contrary to the rule against basing inferences upon inferences, before it would have the effect of directly countering the testimony of the medical witness on the ultimate probative facts to which his evidence related, we conclude the rejection of the offer was not reversible.

Secondly, as stated by the court during the trial below, the case there was not a bastardy proceeding. It was an action on contract. It is to be remembered that defendant defended against plaintiff's suit upon the alleged contract upon several grounds. Several of defendant's defenses related to altogether different matters than that concerning which plaintiff herein complains.

One defense, over which there was sharp division between the parties, was the claim by defendant that, by the terms of the contract he would be required to pay plaintiff the sum of $15,000.00 only if he received $17,500.00 upon the exercise by a California corporation of an option to buy defendant's and all other shareholders' stock in a Delaware corporation owning uranium

mining claims in Utah by November 1, 1954. The California corporation had pro-vided that in the event of the pendency of litigation over the title to such mining claims, it could exercise its option within 60 days after finality of such litigation. A suit involving title to some of such claims had been filed in 1953, was pending when the contract between the parties hereto was made and did pend until settled in 1956. Plaintiff claimed defendant defrauded her in setting Nov. 1, 1954, in their contract, as the time by which he must receive his money under the option mentioned before being bound to pay her. She also sought to show defendant knew the litigation over the mining claims was pending when he and she signed their settlement agreement and thereby defrauded her since the California option might be exercised long after Nov. 1, 1954.

Again, there was sharp division between the parties as to whether defendant intend-ed any money he was going to pay under the terms of the settlement contract, if any, to be for the benefit of his son, if it was his son, or whether, as he testified, he just "give (his) money away" to get plaintiff "off (his) back."

As hereinabove noted, there was sharp division between the parties as to whether a payment of $1500.00 made to plaintiff by defendant through his attorney was to be applied on the settlement agreement or was in settlement of plaintiff's Utah divorce suit in which she had been unable to get service of process upon defendant.

Further, there was division of the testi-mony as to whether plaintiff had left de-fendant's bed temporarily at a time earlier than the commencement of the full gesta-tion period preceding the birth of her baby, claimed by her to be defendant's son.

There was division between the parties as to whether on the one hand plaintiff had defrauded defendant by holding herself out to be eligible to enter into a common-law arrangement with defendant whereas in truth and fact she was then still married to Boring, or whether on the other hand she was defrauded by defendant in that he himself (and his third wife, since de-ceased) had told her that Boring had been killed in action in World War II.

There was division between the parties as to whether, on the one hand, defendant had treated plaintiff as a wife, had had her household effects sent from Chicago to Kansas City and later to Utah, had rented a house there for plaintiff and her former-ly-married daughter to live as a family along with defendant while awaiting the arrival of plaintiff's baby, whether defend-ant took plaintiff to the hospital and re-turned one and two or more times a day and helped give information such as his birthplace for filling out the baby's birth certificate, whether he left town before plaintiff got out of the hospital and im-mediately married his fourth wife, exclu-sive of plaintiff, but came back to see plain-tiff and her children, sent them money on which to live for several months, paid a check for $1067.00 drawn on his account with which plaintiff paid the down pay-ment on a new Buick automobile, paid some of the monthly payments thereafter matur-ing on same, etc., or whether on the other hand he did not.

A provision of the settlement contract was that the parties would not thereafter interfere with the mode of living with each other. However, plaintiff, in addition to bringing the divorce action in Utah, com-menced one in Kansas, one in Osage Coun-ty and one in Tulsa County. After Boring obtained a divorce from her in Tulsa Coun-ty, plaintiff dismissed her divorce action pending in such County against defendant and he took judgment on cross-petition against her using his name of Baker, bring-ing any more divorce or separate mainte-nance actions against him, etc. He con-tended her actions herein set forth consti-tuted breach of contract on her part, where-by she forfeited any claimed rights under the alleged contract, that she had harassed him with lawsuits and that the maintenance of her suit from which the present appeal arose constituted a violation of the in-

junction entered against her in Tulsa County.

All these and possibly other matters were covered in the evidence of the parties and in the trial court's instructions to the jury.

 It is basic that the general verdict of the jury presumably amounts to a finding in defendant's favor on all counts. See Cooper v. Woodruff, Okl., 357 P.2d 969.

Since all of the numerous other issues presumptively were resolved by the jury in defendant's favor and the one on which plaintiff desired to reopen the trial and testify related to a claimed fact as to consideration for defendant entering into the contract alleged, rather than to his alleged breach of his obligations thereunder, we find the logic of plaintiff's argument to have less force.

Finally, it is to be remembered that the trial court has considerable latitude, in the exercise of a sound judicial discretion, in the following instances, to-wit: (1), in permitting a party to re-open a trial (See Cales v. Rushing et al., Okl., 321 P.2d 404, 405, syllabus paragraph 4); (2), in determining whether a witness has qualified as an expert (See Thompson v. Boydstun et al., 189 Okl. 530, 118 P.2d 236; cases cited in 2A West's Okl.Dig., Appeal and Error ⊕971(2); and 5A C.J.S. Appeal and Error § 1604, par. b(4), pp. 95–98; (3), in permitting the introduction of rebuttal testimony (See Caughlin v. Streets, 206 Okl. 283, 242 P.2d 724); (4), in permitting the introduction of factual testimony (See Southwest Stone Co. v. Hughes, 198 Okl. 257, 177 P.2d 489; First State Bank of Noble v. McKiddy, 206 Okl. 57, 240 P.2d 1103, 1106); and, (5), in permitting the introduction of opinion testimony (See Phoenix Ins. Co. v. School Dist. No. 132 of Comanche County, 102 Okl. 251, 228 P. 489, 493; First State Bank of Noble v. McKiddy, supra; Finley et al. v. The Board of County Commissioners of Oklahoma County, Okl., 291 P.2d 333; Tuck v. Buller, Okl., 311 P.2d 212, 66. A.L.R.2d 1043).

In view of the foregoing discussion, we cannot say that the trial court committed reversible error either in refusing permission to reopen or in excluding proffered testimony.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON and BERRY, JJ., concurring.

JACKSON and IRWIN, JJ., dissenting.